WILLIAM E. BROWN *vs.* JARVIS ENGINEERING COMPANY.

Suffolk.   November 21, 1895. — May 20, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Negligence — Master and Servant — Act done by a Servant not as a Means or for the Purpose of performing the Master's Work.*

A foreman, while the work on a building undertaken by several men under his direction is necessarily suspended while rolls of paper are being unloaded from a van and rolled into the basement, has no authority to bind his employer by ordering his men to assist in the unloading; and, if he does so order any of his men, the employer is not responsible for their acts while so assisting in unloading.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant's foreman. At the trial in the Superior Court, before *Blodgett*, J., the jury returned a verdict for the plaintiff, and the defendant alleged exceptions, the nature of which appears in the opinion.

The case was argued at the bar in November, 1895, and afterwards was submitted on the briefs to all the judges.

*S. H. Tyng,* for the defendant.

*S. L. Whipple,* for the plaintiff.

LATHROP, J. The defendant had a contract with the Advertiser Company to construct a brick and mortar foundation for a printing press in the basement of the Advertiser Building. It sent three or four of its workmen there to do the work, in charge of and under the direction of one Healey. While the men were at work, the plaintiff, a driver of a van containing rolls of paper, backed up his van to the rear entrance of the building to deliver the paper to the Advertiser Company. It was necessary that the defendant's work should be suspended while the paper was being unloaded and rolled into the basement. One of the defendant's men, without the knowledge or request of the plaintiff, went upon the dray for the purpose of assisting in unloading it, and carelessly set in motion a roll of paper, which rolled from the dray, and struck and injured the plaintiff.

There was evidence tending to show that Healey ordered his men to go out and assist in unloading the van, so that the defendant's work might be suspended as short a time as possible. Healey testified that he gave no such order, and had no knowledge that any of his men were assisting in unloading the van. It further appeared that Healey's duties were to superintend the construction of the foundation for the printing-press, and that the three or four men with him were under his direction and in the employ of the defendant; and that these men were tenders or helpers in carrying brick or mortar. They were paid by the hour, and when their work was suspended for a time they received no pay from the defendant. They did not receive any pay for the time the work was suspended during the unloading of the dray, which consumed about one hour's time.

The defendant requested two rulings: first, that the action could not be maintained; secondly, that the foreman of the defendant had no authority to bind the defendant by ordering his men to help unload the rolls of paper from the dray driven by the plaintiff; and, if he did so order any of his men, that the defendant would not be responsible for their acts while engaged in helping unload the van. Both of these instructions the pre-

siding judge refused to give, and instructed the jury that, if the foreman, for the purpose of carrying forward the work which he was sent to do, and for the benefit and advantage of the defendant, ordered his men to assist in unloading the dray and one of them did so assist, the defendant would be responsible for any injury he may have suffered by the careless act of the workman who assisted in unloading the van. The jury returned a verdict for the plaintiff, and the case comes before us on the defendant's exceptions to the refusal of the judge to give the rulings requested, and to the ruling given.

The question of law presented by these exceptions is whether the evidence would warrant a verdict for the plaintiff, and this depends upon whether the foreman and workmen acted within the scope of their employment. We are of opinion that, on the evidence, a verdict for the plaintiff would not be warranted. The defendant employed these men to construct a foundation in the basement, and did not employ them to unload vans, or to do any other act, although such act might in some way expedite the business of the master. The act of the defendant's servants was not a necessary, or natural, or proper result of anything that the servants were employed to do. If they had volunteered at the request of the plaintiff to assist him in unloading the van, the defendant would not have been liable *Potter* v. *Faulkner*, 1 B. & S. 800. Here the act of unloading was without the knowledge or request of the plaintiff, and was therefore an act for which the defendant is not responsible. *Bowler* v. *O'Connell*, 162 Mass. 319. *Harding* v. *Boston*, 163 Mass. 14. *Driscoll* v. *Scanlon*, 165 Mass. 348. *Lyons* v. *Martin*, 8 A. & E. 512. *Mitchell* v. *Crassweller*, 13 C. B. 237. *Storey* v. *Ashton*, L. R. 4 Q. B. 476. *Bolingbroke* v. *Swindon Local Board*, L. R. 9 C. P. 575. *Stevens* v. *Woodward*, 6 Q. B. D. 318. *Rayner* v. *Mitchell*, 2 C. P. D. 357. *M'Kenzie* v. *M'Leod*, 10 Bing. 385.

Even if the act of Healey in directing the men to unload the van was for the purpose of carrying forward the work and for the benefit of the defendant, yet as this act was not within the scope of his employment the defendant is not responsible. In the construction of a building it frequently happens that one set of workmen has to wait until another set of workmen gets

through, but it never has been supposed that this would authorize a foreman of a gang of painters to direct his men to assist carpenters or plasterers, or to attempt to do their work, although the doing of it might in a sense be said to facilitate the carrying forward of the work of painting. Men are employed because they are supposed to be skilful in their particular trades, and when they are set to do a work within their trade they carry no implied authority from their master to engage in any other trade. In *Limpus* v. *London General Omnibus Co.* 1 H. & C. 526, it was said by Blackburn, J.: "It is not universally true that every act done for the interest of the master is done in the course of the employment. A footman might think it for the interest of his master to drive the coach, but no one could say that it was within the scope of the footman's employment, and that the master would be liable for damage resulting from the wilful act of the footman in taking charge of the horses."

In the opinion of a majority of the court, the entry must be,

*Exceptions sustained.*