## FIREMEN'S FUND INDEMNITY COMPANY
### vs.
## . LONGSHORE BEACH AND COUNTRY CLUB

Superior Court          Fairfield County          File #49969

Present:   Hon. JOHN A. CORNELL, Judge.

Keogh & Candee,                    Attorneys for the Plaintiff.

Cummings & Lockwood;
Charles H. Blackall;
Taylor & Tribou,                   Attorneys for the Defendant.

## MEMORANDUM FILED JUNE 5, 1937.

CORNELL, J. The plaintiff was the insurer of a car owned by The Sterling Furniture Company and in that capacity paid to its insured the sum of $1,000.00 as the equivalent of damages done to such automobile when, on June 16, 1935, it was driven from a dock on defendant's premises by an employee of the latter and submerged in the waters of a yacht basin. To the extent of the sum thus paid plus an item of $150.00 expended by The Sterling Furniture Company for the use of a derrick in pulling the automobile out of the water the plaintiff claims to be subrogated to the rights of its insured.

The complaint is in two counts, the first of which sounds in negligence and in the second of which liability is sought to be predicated upon a violation of duty by the defendant as bailee of the car. An element common to both is that the negligence alleged in the first count and the defendant's alleged failure to perform its duty as bailee as stated in the second count hinge upon the conduct of one of defendant's employees in the relationship in which he is alleged to have stood toward the driver of the insured's car.

It is admitted that the defendant, The Longshore Beach & Country Club, is the lessee of the property where the accident occurred and has there an establishment in which it furnishes club facilities to its members, of whom the driver of the insured's car, viz., Fred A. Giorchino, was one. It appears that in the late afternoon of June 16th, 1935, the latter drove to the club properties and after playing golf during the afternoon and early evening had dinner at the club house. On entering the grounds the car had been parked by one of the several attendants maintained by the management for that purpose, who were compensated by tips paid them by such car owners. Following dinner and between 9:30 and 10:00 o'clock P. M., Giorchino came from the club with the intention of returning to his home. At that time it was very dark and he applied to an employee upon whose uniform there was the club insignia, asking him if he could drive and upon being assured that he could, told him he would give him a tip of 50c if he would "get the car". From the evidence, it appears that while in the act of carrying out this mission the car was driven by the employee to and off the dock and the employee drowned.

The first question is whether or not the employee Plant was defendant's agent and servant and this, in turn, depends

upon whether, at the time, he was either acting within the scope of his employment in respect of a duty, express or implied, imposed upon him by defendant.

Plant was a man sixty-five years of age. He was hired as, and his duties consisted of those of a night watchman about the place with the exception that on Saturdays and Sundays he acted as a gateman. The latter task required him to stand at the entrance of the club grounds about a mile from the club house to see to it that none but club members entered the premises. His work in this respect was finished at 9:00 o'clock P. M. after which he was at liberty to go home. His compensation was $60.00 per month which included two meals a day, viz., one at noon and one at night. The night meal he usually took at 6:00 P. M., but it was his habit after finishing his duties to go to the kitchen in the club house and partake of a repast.

The club furnished a number of attendants for the purpose of parking the cars of members and guests and returning such cars to the latter when leaving the club house or grounds. Plant's duties did not require that he do any such work and other than on the occasion in question he was never known to have done so. Neither was his superior aware of whether he was capable of operating a car or was licensed to do so. On the night in question, after he had been to the kitchen to eat he was about the club house, attired in his uniform which in general appearance was the same as that of the attendants who took care of cars. There was no attendant at hand as Giorchino came out.

The conclusion is inevitable that in procuring the car from the place where it was parked for the purpose of delivering it to Giorchino, Plant was not performing any duty which he had been directed to do by his employer either as a result of general or specific instructions.

If liability is to be fastened on defendant, that can only occur if Plant's conduct, was, nevertheless, within the implied scope of his employment. The mere fact, however, that a benefit enures to an employer from something done by his servant, is not, alone sufficient to impose liability on such master, if when doing it, the servant commits a tort to the injury of another. To accomplish such a result, the circumstance alone that the servant was at the time acting "with a view to furthering his master's business" is not enough. An

essential concurring element is that the act performed for his masters' benefit, if not accomplished as the result of his master's direction or with his permission, knowledge or acquiescence, be within the field of his prescribed general duties —that is to be done while performing "the work assigned to him to do." **Turner vs. Am. Dist. Tel. & Mess. Co., 94 Conn. 707.**

Aside from other considerations suggested by the evidence, it seems plain that parking or delivering cars of patrons and guests was not only no part of Plant's duties, but, also, was conduct in no way calculated to enable him to perform the tasks assigned to him and so in no sense incidental to the latter.

"The test is to be found in the nature of the tortious act and its relation or non-relation to that which the actor was employed to do." **Turner vs. Am. Dist. Tel. & Mess. Co. 94 Conn. 707, 713.**

There can be no question whether an act is within the scope of a servant's authority, when it appears that the servant never at any time had the original authority and the act was one in no way connected with, incidental to or such as might reasonably be found to enable or assist him in performing the work assigned to him. The breadth of the authority cannot be tested when the authority never existed. Plant never, so far as the evidence reveals, was authorized to park or deliver cars and never did so except upon the one fatal occasion which precipitated this suit. Any design which he entertained to advance the defendant's interests in procuring the car for Giorchino is not potent to supply the essential element which is lacking, to make the defendant responsible for the legal consequences of his act while carrying out his purpose. **Brown vs. Jarvis Engraving Co., 166 Mass. 75, 45 N.E. 118, 32 L.R. A. 605; Slattery vs. O'Meara, 120 Conn. 465, 470; Gazdick vs. Gates Body Co. 107 Conn. 171.**

Indeed, the evidence lends itself to the conviction that Giorchino knew that Plant's duties did not include the act which he was engaged in performing when the car was damaged. Else why did Giorchino practically make a bargain with Plant to pay him 50c for his work? And why the query, whether Plant could drive a car, since it was well known to Giorchino that the regularly assigned attendants were qualified operators of motor vehicles.

The conclusions reached supra obviously dispose of any

liability on defendant's part on the theory that a bailment existed as alleged in the second count.

Judgment in favor of all defendants.