FIREMAN'S FUND INDEMNITY COMPANY *v.* THE LONG-SHORE BEACH AND COUNTRY CLUB, INC., ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued December 6, 1940—decided February 7, 1941.

*John Koegh, Jr.,* with whom, on the brief, was *G. Francis McKendry,* for the appellant (plaintiff).

*Matthew E. Hanna, Jr.,* for the appellees (defendants).

ELLS, J. An automobile insured by the plaintiff was damaged when driven by James Plant into a yacht basin. Upon payment of the loss, the plaintiff, as subrogated to the rights of its insured, brought an ac-

tion against the operators of defendants' club, claiming negligence on the part of an attendant in parking the car in an improper place, negligence on the part of Plant, an employee of the club, in driving the car into the yacht basin, and in a second count, a breach of a contract of bailment. The major issue is whether Plant was acting within the apparent scope of his employment.

A brief statement of facts found by the trial court and not questioned by assignments of error is as follows. The defendants provided at their club house a number of boys and young men to park the cars of members as they arrived and to procure and deliver such cars to them on leaving. Their compensation was wholly derived from tips. South of the club house an inlet from Long Island Sound forms a yacht basin, on the east and west sides of which are docks. To the east of the basin there is a large parking space. To the west there is an elliptical drive serving a boat house, a caddy house, in which are locker rooms for members, and bathhouses. Immediately east of the easterly side of the elliptical drive is the westerly side or dock of the yacht basin. This drive was not provided for parking purposes, for cars stopped there would make it difficult for others to drive around, but certain members, including Fred Giorchino, occasionally parked their cars there because of its proximity to the locker rooms and showers.

Giorchino, long a club member, drove up to the club house at 4 o'clock one Sunday afternoon, to play golf. Upon his arrival he surrendered his car to a parking attendant, as was his custom, and the latter parked it somewhere near to and on the westerly side of the yacht basin, facing east toward the basin. Giorchino played golf, and when he had finished, the same attendant delivered it to him, but upon being informed

that he was not then leaving, took the car back to the same place. Giorchino had dinner at the club house, after which he came out onto the porch to depart, at about 10 o'clock. There were no parking attendants at hand. Plant, a watchman employed by the defendants, had finished his work, and had come out of the club house on his way home. He was attired in a blue uniform; the parking attendants wore green ones. Giorchino asked him if he could drive a car, to which Plant replied "Yes." Giorchino then said "I will give you a tip of fifty cents if you will get my car." Plant assented, and departed, but did not return. A search was made. The car was found submerged in the waters of the yacht basin. Plant was in the driver's seat, drowned.

On certain nights in the week Plant was employed by the defendants to patrol the grounds from 9 until 5 o'clock the next morning, as a night watchman. On Saturdays and Sundays his duties were quite different. He was watchman at the gate to the grounds, a mile from the club house, and his hours of employment were from noon until 9 o'clock. His duty was to prevent any but club members from entering the grounds, and on the day and evening in question he was thus employed. He was paid $60 a month, and received certain meals. He was about sixty-five years of age. He had no authority to park or deliver cars for members at any time and had none from the defendants when Giorchino engaged him to obtain his car. There was no testimony that he had ever done so on any other occasion, for anyone, and it was not known whether he was capable of doing so. On the night in question Plant was through work at 9 o'clock. In accordance with his custom he went to the club house kitchen where he ate a lunch before leaving for home, and walked out onto the porch to depart. Then came

the interview with Giorchino, and its tragic consequences.

Upon these facts the plaintiff concedes, as it must, that Plant was not acting within the scope of his actual authority, but claims that he was acting either within the scope of his implied or his apparent authority. In addition to the unchallenged facts found, the court found that Giorchino knew the regular parking attendants were the only persons authorized to park cars, that Plant was not one of them, but a watchman only, and that he had never driven cars for the defendants or other members. The plaintiff claims these facts were found without evidence, and says "it is in one sense the very crux of this appeal." Giorchino's own testimony is that each week-end when he went to the club Plant was at the gate, that he knew why he was there, and that he never saw him park cars. When he came out of the club, he asked Plant if he could drive. He recognized Plant, and knew he was the gateman. From this and other testimony concerning Giorchino's rather intimate knowledge of the parking situation and from the testimony of other witnesses, the court could fairly find these facts. They are reasonable inferences drawn from the entire evidence.

The trial court concluded that Plant was negligent, and that his negligence was the proximate cause of the accident, but that he was not acting within the scope of his employment with the defendants, and was not engaged in the performance of any duty assigned to him by the defendants, or any that was incidental thereto, nor in furtherance of the defendants' interests; that he was the agent of the plaintiff.

A statement of the law governing the situation as to apparent authority is found in *Quint* v. *O'Connell*, 89 Conn. 353, 357, 94 Atl. 288, and is as follows: "Apparent and ostensible authority is such authority

as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. 'The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.' " In *Zazzaro* v. *Universal Motors, Inc.*, 124 Conn. 105, 111, 197 Atl. 884, we refer to *Quint* v. *O'Connell*, supra, and say that "apparent power of an agent is to be determined not by his own acts but by those of the principal."

Applying these tests to the facts found, it is apparent that Plant was not acting at the time even in the apparent or ostensible scope of his authority. The

plaintiff failed to establish that the defendants held Plant out to the members as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; or that Giorchino acting in good faith had reason to believe and did believe that Plant possessed the necessary authority. The defendants' liability is determined by what authority Giorchino, exercising reasonable care and prudence, was justified in believing that the defendants had by their acts under the circumstances conferred upon Plant. Giorchino's question whether Plant could drive a car, and his bargain with him are among the significant facts.

The plaintiff claimed also that Plant had implied or incidental authority. This is ordinarily a question of fact. *Russo* v. *McAviney,* 96 Conn. 21, 24, 112 Atl. 657. "Implied authority is a fact to be proven by deductions or inferences from the manifestations of consent of the principal and from the acts of the principal and agent; it is that which the principal intends his agent to possess and which is proper, usual, and necessary to the exercise of the authority actually granted or to the purpose to be achieved." 2 Am. Jur., § 85, p. 69. Restatement, 1 Agency, § 35. In *Russo* v. *McAviney,* supra, we held that an employee's authority to operate a motor vehicle for his employer may exist where it is not express but is fairly to be implied from the nature of his employment, his duties for his employer, and the manner in which he has performed such duties with the employer's knowledge. The facts found do not reasonably lead to the conclusion that Plant possessed implied or incidental authority.

It follows from these conclusions that there was no actionable breach of a contract of bailment, since if there was such a contract, it was terminated by the attempt of Plant to obtain the car under employment

by Giorchino. What was the contract? The plaintiff contends it was to park and redeliver the car unharmed. The facts as found do not constitute a contract to redeliver the car at any and all hours of the night. The only basis for the claim is the finding that the defendants supplied a number of boys to park cars and to procure and deliver them on leaving. They would not be delivered except upon request. There is nothing to indicate that the defendants agreed to have a boy on or near the porch to await orders, at all hours. Obviously the owner could get his own car when he was ready, or send his chauffeur for it, and if damage occurred on the way to the porch these defendants would not be liable. This case is not like *Maynard* v. *James,* 109 Conn. 365, 146 Atl. 614, relied on by the plaintiff. In that case there was a garageman's breach of duty to store and safely keep the car until the owner came for it, and it was held that the bailee was liable for an injury to the property bailed, occurring during the use of it by him, or by others with his consent, which was neither expressly nor impliedly authorized by the contract of bailment, even though the injury was the result of accident and not of negligence in the manner in which the property was used.

The remaining claim is that the injury was caused by the negligent act of the boy who originally parked the car in a place other than the regular parking space. The court concluded that if the boy was the defendants' agent and was negligent in parking the car where he did, "the operation of such negligence was intercepted by Plant's conduct and did not constitute a proximate cause of accident." This is manifestly correct.

There is no error.

In this opinion the other judges concurred.