******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ESPINOSA and ROBINSON, Js., join, dissenting. In elementary school history, we are all taught that the legislature makes the law, the judiciary interprets the law, and the executive enforces the law. Those who are learned in the law, however, understand that this is an oversimplification of our constitutional order. Since before the founding, judges in England, from whom the judiciary takes many of its traditions, and this country, acting as stewards of the common law, have engaged in lawmaking. As such, judges, not legislators, at least in the early years of our republic, tended to the development of the law in such areas as property, contract, and tort. Thus, a disconnect exists between our elementary understanding of the separation and delegation of the powers and duties of government, on the one hand, and the actual allocation of work among the branches, on the other. In addition, there is a small area over which both the judiciary and the legislature have the authority to enact policy. In the beginning, such dual authority was relatively unproblematic. Legislatures largely dealt with public law, and the courts tended to private law. See, e.g., D. Farber & P. Frickey, "In the Shadow of the Legislature: The Common Law in the Age of the New Public Law," 89 Mich. L. Rev. 875, 876 (1991). In the age of the regulatory state and statutory proliferation, however, the legislature has become increasingly involved with private law; see, e.g., General Statutes § 30-102 (abrogating common-law negligence cause of action against purveyors of alcohol for injuries caused by intoxicated persons); General Statutes § 52-557d (abolishing common-law defense of charitable immunity); General Statutes § 52-572h (b), (c) and (*l*) (eliminating, in certain cases, doctrine of contributory negligence, providing for proportionate, rather than joint and several, liability in cases involving multiple tortfeasors, and abolishing doctrines of last clear chance and assumption of risk); raising this pragmatic question: What is the role of the common-law judge in the era of the ever engaged legislature? The present case brings this question to the forefront.

Before I reach that question, however, I must attend to a preliminary matter. The plaintiff in the present case, Lisa J. Cefaratti, claims that the Appellate Court incorrectly concluded that the doctrine of apparent agency does not extend to tort actions, thereby preventing her from holding the defendant Middlesex Hospital (hospital) vicariously liable for the alleged negligence of the named defendant, Jonathan S. Aranow, a surgeon who is not an employee of the hospital but who has privileges to and does perform surgeries at the hospital. The plaintiff argues that such conclusion is contrary to our holdings in *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*,

127 Conn. 493, 496–97, 18 A.2d 347 (1941), which, she contends, recognized that the apparent agency doctrine is applicable to tort actions, and *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 617 n.5, 716 A.2d 857 (1998), which, she argues, implicitly affirmed the doctrine's availability in tort cases. In response to the hospital's argument that this court has extended apparent *authority* to tort actions but has not, and should not, extend apparent *agency* to such cases, the plaintiff contends that this court's jurisprudence does not distinguish between the two doctrines.

I need not decide whether our case law recognizes a difference between apparent agency and apparent authority or, if it does, whether such distinction provides a principled reason for applying one doctrine to tort actions but not the other. Instead, I conclude that this court has never decided whether either doctrine should be available to plaintiffs seeking to hold individuals or entities vicariously liable for the tortious conduct of another. I must, therefore, consider that question as a matter of first impression.

In *Fireman's Fund Indemnity Co.*, the plaintiff insurer brought a subrogation action against the defendant country club (club), among others, to recover for amounts the insurer had paid to its insured for damages caused to the insured's vehicle by an employee of the club. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 493–94. The insurer claimed, among other things, that the club's employee was acting within his implied or apparent authority and, therefore, that the club could be held liable for the employee's negligence. See id., 496. In addressing the insurer's argument, this court did not decide, or even discuss, whether the club could be held vicariously liable for the negligence of the employee under a theory of apparent authority. Instead, relying on two contract cases, namely, *Quint* v. *O'Connell*, 89 Conn. 353, 94 A. 288 (1915), and *Zazzaro* v. *Universal Motors, Inc.*, 124 Conn. 105, 197 A. 884 (1938), the court in *Fireman's Fund Indemnity Co.* merely concluded that the insurer had not established that the employee was, in fact, acting within his apparent authority. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 496–97. The plaintiff claims that implicit in this holding is that the doctrines of apparent authority and apparent agency do apply to tort actions because, in the plaintiff's view, we would not have decided whether the employee had acted within his apparent authority if the doctrine did not apply.

In a similar vein, and despite its acknowledgment that the court in *Fireman's Fund Indemnity Co.* "did not expressly analyze the issue," the majority in the present case concludes that *Fireman's Fund Indemnity Co.* applied the doctrine of apparent authority to

tort actions. The majority reasons that the there is no language in *Fireman's Fund Indemnity Co.* to suggest that the court was simply assuming, without deciding, that the club could be held vicariously liable for the employee's negligence under that doctrine. In addition, the court in *Hanson*, the majority and the plaintiff argue, recognized *Fireman's Fund Indemnity Co.* as applying apparent authority in tort actions. Finally, the majority cites the hospital's acknowledgment that *Fireman's Fund Indemnity Co.* extended the doctrine of apparent authority to tort actions.

I respectfully disagree with the plaintiff's and the majority's reading of *Fireman's Fund Indemnity Co.*, and their rationales for such a reading. First, I doubt that this court adopted a liability expanding doctrine without some consideration and discussion. Generally, this court weighs the relevant policy considerations when deciding whether to expand or limit tort liability by adopting new doctrines or creating new causes of action. See, e.g., *Campos* v. *Coleman*, 319 Conn. 36, 57, 123 A.3d 854 (2015) (recognizing new cause of action for loss of parental consortium after evaluating relevant public policy factors and concluding that factors weigh in favor of recognizing such claim); *Sic* v. *Nunan*, 307 Conn. 399, 401, 412, 54 A.3d 553 (2012) (declining to recognize duty of driver to position wheels of vehicle straight while waiting to make left turn, noting that there were no "public policy concerns that would justify the imposition of new liability"); *Craig* v. *Driscoll*, 262 Conn. 312, 328–29, 813 A.2d 1003 (2003) (recognizing "a common-law negligence action for injuries caused by an intoxicated adult patron against purveyors of alcoholic liquor" because such action would supplement and further state's public policy goals as expressed through enactment of Dram Shop Act); *Hamon* v. *Digliani*, 148 Conn. 710, 716–18, 174 A.2d 294 (1961) (abolishing privity of contract requirement in breach of warranty cases, thereby laying foundation for strict product liability, noting that other jurisdictions have done so "on [the basis of] the public policy of protecting an innocent buyer from harm," and observing change in how products are delivered from manufacture to end consumer). In the absence of any indication that the court in *Fireman's Fund Indemnity Co.* gave any thought to the policy considerations implicated by a decision to extend liability to purported principals by adopting the doctrine of apparent authority in tort actions, I will not so readily assume that it did. Second, neither the plaintiff insurer nor the defendant club in *Fireman's Fund Indemnity Co.* briefed the issue of whether apparent authority should apply in tort actions;[1] see generally *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, Conn. Supreme Court Records & Briefs, December Term, 1940, Pt. 1, Plaintiff's and Defendants' Briefs; and it is the policy of this court to refrain from addressing issues

not raised by the parties. See, e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014) ("It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." [Citations omitted; internal quotation marks omitted.]); see also id., 128 (holding, "with respect to the propriety of a reviewing court raising and deciding an issue that the parties themselves have not raised, that the reviewing court [1] must do so when that issue implicates the court's subject matter jurisdiction, and [2] has the discretion to do so if [a] exceptional circumstances exist that would justify review of such an issue if raised by a party, [b] the parties are given an opportunity to be heard on the issue, and [c] there is no unfair prejudice to the party against whom the issue is to be decided"). Third, it is not uncommon for this court to avoid answering legal questions that do not affect the outcome of a case. See, e.g., *State* v. *Bacon Construction Co.*, 300 Conn. 476, 480, 482, 15 A.3d 147 (2011) (assuming without deciding that *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194–95, 544 A.2d 604 [1988], which allows immediate appeal from denial of collateral estoppel defense in context of administrative proceedings, should not be overruled because that case did not extend to prejudgment remedy proceeding). Thus, the plaintiff assumes too much in her assertion that the court in *Fireman's Fund Indemnity Co.* must have decided that the doctrine of apparent authority applies in tort cases because it decided that the plaintiff insurer had not established that the employee was acting within his apparent authority. Fourth, this court's cursory statement in *Hanson*, in a parenthetical in a footnote, that *Fireman's Fund Indemnity Co.* "appl[ied] similar [actual, implied, or apparent] agency principles in [a] tort action"; *Hanson* v. *Transportation General, Inc.*, supra, 245 Conn. 617 n.5; does not transform *Fireman's Fund Indemnity Co.* into something it is not. As I have already explained, the court in *Fireman's Fund Indemnity Co.* merely decided that the plaintiff insurer had not established, as a factual matter, that the club employee was acting within his apparent authority. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 496–97. It *did not* decide to apply that doctrine in a tort action. See id. Finally, we are not confined by the parties' mistaken readings of our case law, and, therefore, I find it irrelevant that the hospital in the present case also reads *Fireman's Fund Indemnity Co.* to hold that the doctrine of apparent authority applies in tort actions.

Because *Fireman's Fund Indemnity Co.* does not

apply the doctrine of apparent authority or apparent agency to tort actions, this court must decide in the present case, as a matter of first impression, whether such doctrine should be available to tort plaintiffs. Thus, I return to the question that I previously raised: What is the role of a common-law judge in the era of the ever engaged legislature? In this particular case, which involves the allocation of liability among the different functionaries in a complex and highly regulated industry, I believe it is wise to defer to the legislature to address this issue in the first instance. Of course, I do not dispute that this court has the authority to decide the issue presented, as I have framed it. Instead, I simply suggest that we should refrain from doing so, as a matter of prudence.

This court has long espoused the principle that the legislature, and not this institution, shall set the policy of the state. See, e.g., *Sic* v. *Nunan*, supra, 307 Conn. 410 (declining to recognize duty of "drivers to keep their wheels pointed in a particular direction when stopped at an intersection waiting to turn," in part because "it is undisputed that the legislature, which has the primary responsibility for formulating public policy . . . has not seen fit to enact any statutes requiring [such conduct]" [citation omitted; internal quotation marks omitted]); see also *General Motors Corp.* v. *Mulquin*, 134 Conn. 118, 132, 55 A.2d 732 (1947) ("it is for the legislature, which is the arbiter of public policy, to determine what [public policy] shall be"); *New Haven Metal & Heating Supply Co.* v. *Danaher*, 128 Conn. 213, 222, 21 A.2d 383 (1941) ("the legislature determines the public policy of the state"); *State* v. *Gilletto*, 98 Conn. 702, 714, 120 A. 567 (1923) ("[t]he legislature is the arbiter of public policy"). I acknowledge, as I must, that many of these cases involved statutory law rather than the common law and, therefore, are different from the present case, which falls within the common-law sphere of torts. Nevertheless, we have also recognized, in a slightly different context, that "[i]t is not the role of this court to strike precise balances among the fluctuating interests of competing private groups"; *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 65, 469 A.2d 1201 (1984); such as, on the one hand, people who are similarly situated to the plaintiff in the present case and, on the other hand, hospitals and other health-care institutions. "That function has traditionally been performed by the legislature, which has far greater competence and flexibility to deal with the myriad complications [that] may arise from" the assignment of liability. Id.

Striking a balance between competing private interests and public policy considerations undoubtedly has been a function of the Legislative Branch due to its institutional aptitude to address such issues. There are a variety of questions that arise in the context of considering whether to expand liability and, relatedly, who should bear the burden for such liability. For example,

in the present case, in determining whether hospitals should be vicariously liable for the malpractice of non-employee physicians and surgeons, a policy maker might desire a comprehensive understanding of general staffing arrangements at area hospitals, gather data regarding the number and outcomes of malpractice actions, and query the current remedies available to malpractice victims and the inadequacy, if any, of such remedies. Prior to making a determination, the decision maker might also consider General Statutes § 20-11b (a), which requires certain medical providers to maintain minimum liability insurance, and collect cases, if any exist, in which such minimum coverage was insufficient to adequately compensate patients who had been victims of medical malpractice.[2] Additional factors ripe for consideration are (1) the impact such expansion of liability has had in other jurisdictions, on both hospital financing and medical malpractice actions, and (2) the myriad regulations that currently govern the health-care industry and health-care providers. Through public hearings, the legislature can collect data and receive testimony in regard to such matters from industry leaders and affected members of society, including the plaintiff's bar. The legislature may also consult outside experts and elicit input from state regulators. Moreover, the legislature can enact comprehensive reform, establishing the boundaries of liability and providing predictability to health-care institutions and their insurers. Finally, determining who should bear the burden for harm caused by medical malpractice is a value judgment, and the legislature, as an elected body, may be held accountable if the allocation it makes is not in line with societal values.

In contrast, the Judicial Branch is ill equipped to methodically address questions of liability expansion with potentially far-reaching societal consequences. In answering such a question, courts are limited to the record created and the evidence introduced by the parties. See, e.g., *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 27, 901 A.2d 649 (2006) (observing that appellate "review is limited to matters in the record"). Moreover, courts, unlike the legislature, are not free to consult outside sources and to collect their own data. Instead, they are confined by rules of judicial notice. See, e.g., *Moore* v. *Moore*, 173 Conn. 120, 121–22, 376 A.2d 1085 (1977) ("[o]ur own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned . . . which may be judicially noticed without affording a hearing" [citations omitted]). In addition, courts are limited to deciding the cases and questions before them. Consequently, they develop policy on an ad hoc basis and on the basis of the facts presented in each case, which creates

uncertainty. The present case provides an example. Despite holding that hospitals, in some cases, may be vicariously liable for the negligence of nonemployee physicians and surgeons, the majority does not decide whether an exception for such liability should exist when the hospital informs patients that certain physicians or surgeons are not employed by the hospital. See footnote 27 of the majority opinion. Instead, the majority simply states that that question is not before the court in this case, and, therefore, it must be left for another day. Id. Finally, members of this court, unlike the elected bodies of government, cannot be held accountable for the value judgments they reach.

Additionally, deference to the legislature seems to be a particularly prudent course of action in the present case because hospitals are highly regulated institutions within a highly regulated industry. Hospitals are subject to certificate of need requirements, limiting their ability, for example, to purchase certain equipment or to add and discontinue certain services without first receiving approval from the Department of Public Health. See General Statutes § 19a-638 (a). In addition, hospitals are licensed by the Department of Public Health and must comply with regulations regarding, among other things, physical plant, medical staffing, medical records, and emergency planning. See, e.g., Regs., Conn. State Agencies §§ 19-13-D3, 19-13-D4a and 19-13-D5. As a payor of health-care services, the state also has a large impact on hospital financing. See, e.g., General Statutes § 17b-239 (a) (2) ("Medicaid rates paid to acute care and children's hospitals shall be based on diagnosis-related groups established and periodically rebased by the Commissioner of Social Services"). Due to the complex regulatory scheme governing health-care facilities, it is my view that this court should not disturb the careful balance that the legislature has achieved by exposing hospitals to vicarious liability for injuries caused by nonemployees. Instead, I would defer to the judgment of the legislature.

In sum, the arrival of any new era is necessarily accompanied by the end of another. Thus, the modern age of growing complexity and rapid change, in my view, brings to an end the period in which this court should make sweeping, common-law jurisprudential changes.[3] Instead, the legislature, which has become ever engaged in the common-law sphere, is institutionally better equipped to continue the development of the common law. Moreover, the legislature, an elected body with public processes, is designed to reflect the morality and experience of our time. Law giving by the legislature is more democratic, and it also is less likely to do serious harm. Accordingly, I conclude that this court should refrain from recognizing the doctrine of apparent agency in tort actions and, instead, defer to the judgment of the legislature regarding whether hospitals should be subject to vicarious liability for the malprac-

tice of nonemployee health-care providers. Therefore, I respectfully dissent.

[1] It does not appear that the trial court in *Fireman's Fund Indemnity Co.* considered the applicability of the doctrine of apparent authority to tort actions either. See *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club*, 5 Conn. Supp. 165, 166–68 (1937), aff'd, 127 Conn. 493, 18 A.2d 347 (1941). Indeed, it framed the issue of the club's liability as follows: "The first question is whether or not the employee . . . was [the defendant club's] agent and servant and this, in turn, depends [on] whether, at the time, he was either acting within the scope of his employment in respect of a duty, *express or implied*, imposed [on] him by [the club]." (Emphasis added.) Id., 166–67.

[2] It is certainly arguable that the enactment of such a requirement reflects the legislature's judgment that individual health-care providers, and not hospitals, should be liable for their own negligence, and that, if the liability insurance required by such statute is inadequate to provide relief to the plaintiff in the present case and those individuals similarly situated, their recourse is to ask the legislature to increase the minimum amount of coverage required.

[3] There is a difference, of course, in correcting the common law, on the one hand, and expanding or changing the course of the common law, on the other. In the case of the former, this court should continue to exercise its common-law authority to harmonize common-law rules with "[t]he felt necessities of the time . . . ." O. Holmes, The Common Law (1881) p. 1.