******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA J. CEFARATTI *v.* JONATHAN S.
ARANOW, M.D., ET AL.
(AC 35659)

Beach, Sheldon and Bear, Js.

*Argued March 20—officially released December 9, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J.)

*Kelly E. Reardon*, with whom, on the brief, was
*Robert I. Reardon, Jr.*, for the appellant (plaintiff).

*Ellen M. Costello*, for the appellees (named defendant
et al.).

*S. Peter Sachner*, with whom, on the brief, was *Jason
T. Prueher*, for the appellee (defendant Middlesex
Hospital).

*Opinion*

BEACH, J. The principal issue presented is whether the statute of limitations in this medical malpractice action may be tolled by application of either the doctrine of continuing treatment or the doctrine of continuous course of conduct, or both. The action was brought by the plaintiff, Lisa J. Cefaratti, against the defendants, Jonathan Aranow, a licensed physician specializing in general, bariatric, vascular, and thoracic surgery; Shoreline Surgical Associates, P.C. (Shoreline), Aranow's professional corporation; and Middlesex Hospital (hospital).[1] The plaintiff appeals from the trial court's judgment granting the defendants' motions for summary judgment. The plaintiff claims that: (1) the court improperly rendered summary judgment for Aranow and Shoreline because (A) genuine issues of material fact existed as to whether the continuing course of conduct doctrine applied to toll the statute of repose set forth in General Statutes § 52-584,[2] and (B) genuine issues of material fact existed as to whether the continuing treatment doctrine applied to toll the statute of repose in § 52-584; (2) the court improperly declined to recognize a "foreign object" exception to the statute of repose; (3) the court improperly failed to consider whether application of the statute of repose violated the plaintiff's constitutional right to access to the courts; and (4) the court improperly granted the hospital's motion for summary judgment because genuine issues of material fact existed as to whether there was an agency relationship between Aranow and the hospital. We reverse, in part, the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial court's rendering of summary judgment, reveals the following facts and procedural history. On or about August 20, 2003, the plaintiff met with Aranow and discussed treatment options for her condition of morbid obesity. After consultation and a physical examination, Aranow recommended that the plaintiff undergo open gastric bypass surgery. On or about December 8, 2003, the plaintiff was admitted to the hospital where Aranow performed open gastric bypass surgery.

On January 14, 2004, May 11, 2004, October 22, 2004, May 10, 2005, November 16, 2005, December 17, 2007, and May 20, 2009, the plaintiff received "follow-up medical care, examinations, treatment, and monitoring" from Aranow. This activity included the review of laboratory test results, ordered by Aranow and conducted by the hospital, on May 8, 2004, October 4, 2004, June 5, 2007, November 27, 2007, January 3, 2008, and March 9, 2009. Approximately one year after the surgery, the plaintiff began experiencing abdominal pain with bowel movements and constipation. She testified at her deposition that each time she saw Aranow she told him that she was experiencing abdominal pain. On or about

August 6, 2009, after being diagnosed with breast cancer by another physician, the plaintiff submitted to a computerized tomography (CT) scan of her chest, abdomen, and pelvis. The CT scan revealed the presence of foreign material in the plaintiff's abdominal cavity. On September 9, 2009, the plaintiff attended an appointment with Aranow, at which time Aranow informed the plaintiff that a foreign object in her abdominal cavity was a surgical sponge.

On August 5, 2010, the plaintiff brought this medical malpractice action. An amended complaint, dated November 30, 2010, included four counts. Count one asserted a claim of medical negligence against Aranow for leaving a surgical sponge inside the plaintiff's abdomen during the open gastric bypass surgery performed on December 8, 2003.[3] Count three alleged that the hospital was vicariously liable for Aranow's negligence. Count four alleged that Shoreline was liable for Aranow's negligence. The plaintiff claimed that, as a result of the defendants' negligence, she incurred additional medical expenses and suffered mental and physical pain, including constipation, protrusion on the left side of her stomach, abdominal pain, fatigue, nausea and chronic pain requiring medication, including narcotics. The plaintiff also claimed that she suffered a permanent impairment of her earning capacity.

On October 1, 2012, the hospital filed a motion for summary judgment as to counts two and three of the plaintiff's amended complaint. As to count three, alleging vicarious liability, the hospital argued that it was entitled to judgment as a matter of law because: (1) there was no genuine issue of material fact that the plaintiff's direct claim of medical negligence against it was time barred and that the statute of repose in § 52-584 was not tolled by the continuing course of conduct doctrine or the continuing treatment doctrine, and therefore the plaintiff's derivative claim against the hospital based on Aranow's alleged negligence must fail; and (2) even if the plaintiff's claim against Aranow was not barred, the hospital was not vicariously liable for Aranow's alleged negligence because there was no genuine issue of material fact that Aranow was not an agent, apparent agent, servant or employee of the hospital. On November 30, 2012, the plaintiff filed an objection to the hospital's motion for summary judgment, along with a supporting memorandum of law, and evidence in the form of deposition testimony, affidavits, pamphlets, and medical records. The plaintiff argued that summary judgment was not appropriate because there were genuine issues of material fact as to whether: (1) the statute of repose in § 52-284, as applied to Aranow, was tolled by the continuing course of conduct doctrine and/or the continuing treatment doctrine; and (2) there was an actual or apparent agency relationship between the hospital and Aranow.

On December 13, 2012, Aranow and Shoreline filed a joint motion for summary judgment as to counts one and four of the plaintiff's amended complaint. Aranow and Shoreline argued that there was no genuine issue of material fact that the plaintiff's claim of medical negligence against them was barred by the statute of repose set forth in § 52-584. On January 16, 2013, the plaintiff filed an objection to Aranow and Shoreline's motion for summary judgment along with a supporting memorandum of law and evidence in the form of deposition testimony, letters, and medical records. The plaintiff argued that summary judgment was not appropriate because there were genuine issues of material fact as to whether the statute of repose was tolled by the continuing course of conduct doctrine and/or the continuing treatment doctrine.

On January 22, 2013, the court, *Aurigemma, J.*, heard oral argument on the defendants' motions for summary judgment. On April 29, 2013, the court granted the defendants' motions for summary judgment as to all counts. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff claims that the court improperly rendered summary judgment with respect to her claims of medical negligence against Aranow and Shoreline because issues of material fact existed as to whether the three year repose provision of § 52-584 was tolled by the continuing course of conduct doctrine or the continuing treatment doctrine.[4]

We set forth our standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must

decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 20–21, 774 A.2d 1063, cert. granted on other grounds, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001).

Our review of the plaintiff's claims is "guided by the law governing the statute of limitations on actions alleging medical malpractice. Section 52-584 requires such actions to be brought within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . . The statute also establishes a repose period under which no such action may be brought more than three years from the date of the act or omission complained of . . . . [T]he relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage. . . . Therefore, an action commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations contained in § 52-584, regardless of whether the plaintiff had not, or in the exercise of [reasonable] care, could not reasonably have discovered the nature of the injuries within that time period." (Internal quotation marks omitted.) *Martinelli* v. *Fusi*, 290 Conn. 347, 355, 963 A.2d 640 (2009).

Our Supreme Court has recognized, however, that "the statute of limitations and [repose section] contained in § 52-584 may be tolled, in the proper circumstances, under either the continuing course of conduct doctrine or the continuing treatment doctrine, thereby allowing a plaintiff to bring an action more than three years after the commission of the negligent act or omission complained of." Id., 355–56. "Despite the considerable similarities and overlap between the two doctrines, however, they are analytically separate and distinct, and the determination of whether to apply either doctrine in a given case is conspicuously fact bound."[5] Id., 356.

Because the continuing course of conduct doctrine and the continuing treatment doctrine are separate and distinct, we analyze separately the plaintiff's claims that the court incorrectly determined that there were no genuine issues of material fact as to whether either such doctrine applied to toll the statute of repose in § 52-584.

A

With respect to her claims of medical negligence against Aranow and Shoreline, the plaintiff claims that the court improperly rendered summary judgment because it incorrectly determined that the plaintiff did not present facts sufficient to create a genuine issue of

material fact as to whether the continuing course of conduct doctrine applied to toll the statute of repose in § 52-584. We disagree.

Under appropriate circumstances, the statute of repose may be tolled under the continuing course of conduct doctrine. *Blanchette* v. *Barrett*, 229 Conn. 256, 265, 640 A.2d 74 (1994). Our Supreme Court has established a three part test for determining whether the statute has been tolled. This test requires the plaintiff to prove that the defendant physician: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the original wrong; and (3) continually breached that duty." *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000). Thus, if there is no genuine issue of material fact with respect to any one of the three prongs of the *Witt* test, summary judgment is appropriate.

With regard the first prong of the *Witt* test, the plaintiff alleged in her complaint that Aranow committed an initial wrong upon the plaintiff by failing to remove all instruments and/or surgical sponges from the plaintiff's abdominal cavity, to assure that the instrument and sponge count was accurate, to perform the open gastric bypass surgery in such a manner as to assure the health and well-being of the plaintiff, to perform the open gastric bypass surgery with the skill required of a general surgeon, to locate the foreign materials in the operative site prior to closing, and to use proper technical skill in performing the gastric bypass surgery because he left foreign materials in the plaintiff's abdominal cavity. In support of these allegations, the plaintiff submitted a written opinion letter from a board certified surgeon stating that Aranow acted negligently in leaving the sponge in the plaintiff. Aranow did not present any evidence contradicting the plaintiff's contentions. Accordingly, for the purpose of summary judgment, there was no genuine issue of material fact as to whether the plaintiff could satisfy the first prong of the *Witt* test.

The parties differ on the second prong of the *Witt* test, that is, whether Aranow owed a continuing duty to the plaintiff that was related to the alleged original wrong of leaving a surgical sponge inside the plaintiff's abdomen during the performance of gastric bypass surgery. "In order to satisfy the second prong of the *Witt* test, the plaintiff must demonstrate that the defendant breached a duty related to the negligent act or omission complained of, which duty remain[s] in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our appellate courts] have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of *either* a *special relationship* between the

parties giving rise to such a continuing duty *or* some *later wrongful conduct* of a defendant related to the prior act." (Emphasis added; internal quotation marks omitted.) *Martinelli* v. *Fusi*, supra, 290 Conn. 359.[6]

"The existence of a duty is a question of law . . . ." (Internal quotation marks omitted.) *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 526, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001). For the purpose of this appeal, we assume, without deciding, that Aranow owed the plaintiff a continuing duty to discover and to remedy his alleged initial wrong by virtue of a special ongoing physician-patient relationship between them. See, e.g., *Blanchette* v. *Barrett*, supra, 229 Conn. 280 (physician had duty to monitor plaintiff's condition after negative diagnosis where there was ongoing relationship).

Assuming that Aranow owed the plaintiff a continuing duty to discover and to remedy his alleged initial wrong, we reach the third prong of the *Witt* test: whether the plaintiff submitted evidence sufficient to create a genuine issue of material fact as to whether Aranow continually breached that duty at some point in time *after* the commission of the original alleged wrong. See *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 373 (examining evidence of subsequent wrongful conduct).

The plaintiff did not submit evidence sufficient to create a genuine issue of material fact as to whether Aranow continually *breached* a duty owed to her at some point *after* the commission of the original alleged wrong.[7] In her objection to Aranow and Shoreline's motion for summary judgment, the plaintiff claimed that Aranow continually breached the continuing duty he owed to her to discover and remedy the initial wrong of leaving a surgical sponge in her abdomen by "failing to properly examine and follow up with the plaintiff to determine that a surgical sponge had been left behind." The plaintiff contends that even if Aranow did not have actual knowledge that a surgical sponge had been left in her abdominal cavity, she had informed him that she was experiencing postsurgical abdominal pain and that, on the basis of this information, he should have ordered exploratory tests that would have revealed the presence of the surgical sponge, and his failure to do so constituted a breach of the continuing duty he owed to the plaintiff.

In support of her statement that she notified Aranow of the abdominal pain she experienced, the plaintiff submitted her deposition testimony, in which she testified that during "almost every visit postsurgically," starting approximately one year after surgery when it became apparent to her that "something was different," she reported her symptoms to Aranow. "[I]t felt like somebody was stabbing me, and I told [Aranow] that whenever I had to have a bowel movement it felt like somebody was twisting something inside of me and I

described it exactly like that and he would palpate and tell me that everything was fine."

The plaintiff, however, did not submit evidence supporting her assertion that, on the basis of the facts of this case, Aranow's not ordering exploratory tests in response to her complaints of abdominal pain amounted to a *breach* of a continuing duty owed to her.[8] Similarly, the plaintiff did not submit expert testimony on the issue of whether, in light of the facts of this case, Aranow's failure to order exploratory tests did not meet the applicable standard of care. See, e.g., *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 207–208 n.13, 746 A.2d 730 (2000) (when determining whether defendant breached duty owed to plaintiff in cases sounding in professional negligence, plaintiff required to present evidence from expert where knowledge of duty beyond experience of ordinary fact finder). This court has consistently held that conclusory statements are not sufficient to create a genuine issue of material fact for the purpose of summary judgment. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, 97 Conn. App. 527, 540, 906 A.2d 14 (2006). Here, the plaintiff's arguments regarding the third prong of the *Witt* test lack evidentiary support and amount to conclusory statements insufficient to withstand summary judgment.

We therefore conclude that the court properly determined that the continuing course of conduct doctrine did not apply to toll the statute of repose in § 52-584 because the plaintiff did not submit sufficient evidence to create a genuine issue of material fact as to all three elements of the *Witt* test. There must be a *continuing breach* of the duty of care to satisfy the third element; here, there is no evidence that, after the initial surgery, Aranow's conduct failed to meet the applicable standard of care.[9]

B

The plaintiff also claims that the court improperly rendered summary judgment in favor of Aranow and Shoreline because it incorrectly determined that the plaintiff did not present evidence sufficient to create a genuine issue of material fact as to whether the continuing treatment doctrine applied to toll the statute of repose.[10] Specifically, she argues that she submitted sufficient evidence to create a genuine issue of material fact as to whether she was receiving ongoing treatment for an "identifiable medical condition," that is, morbid obesity. We agree.

The continuing treatment doctrine "focuses on the plaintiff's reasonable expectation that the treatment for an existing condition will be ongoing, while the [continuing course of conduct doctrine] focuses on the defendant's duty to the plaintiff arising from his knowledge of the plaintiff's condition." (Emphasis omitted; internal

quotation marks omitted.) *Martinelli* v. *Fusi*, supra, 290 Conn. 356.

In order to establish a continuing course of treatment for purposes of tolling the statute of repose set forth in § 52-284, the plaintiff must establish: "(1) that the plaintiff had an identifiable medical condition that required ongoing treatment or monitoring; (2) that the defendant provided treatment or monitoring of that condition after the allegedly negligent conduct, or that the plaintiff reasonably could have anticipated that the defendant would do so; and (3) that the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated." (Footnotes omitted.) *Grey* v. *Stamford Health Systems*, 282 Conn. 745, 754–55, 924 A.2d 831 (2007). Thus, we must determine whether there is no genuine issue of material fact as to any of the three prongs of the *Grey* test.

The court concluded that the continuing treatment doctrine could not serve to toll the statute of repose because the plaintiff did not produce sufficient evidence regarding the first prong of the *Grey* test, that is, she did not present evidence that she had an "identifiable medical condition" that required "ongoing treatment or monitoring."[11] In its memorandum of decision, the court reasoned that because Aranow did not have knowledge of the retained surgical sponge, it was not an identifiable medical condition requiring ongoing treatment: "[T]he plaintiff could have no reasonable expectation that she was being treated for a condition of which no one was aware."

The parties' arguments focus on the first and second prongs of the *Grey* test. With regard to the first prong of the *Grey* test, the parties disagree as to the "identifiable medical condition" for which the plaintiff sought treatment from Aranow. The plaintiff argues that we must view the preoperative, operative, and postoperative treatment that she received from Aranow from the broad perspective of treatment for morbid obesity. The plaintiff submitted evidence, in the form of medical records, deposition testimony, and letters, demonstrating that she sought and received treatment for morbid obesity from Aranow. She argues that this evidence is sufficient to create a genuine issue of material fact as to whether her morbid obesity was an "identifiable medical condition that required ongoing treatment." In contrast, Aranow argues that the plaintiff cannot satisfy the first prong of the *Grey* test because a "retained surgical sponge" is not an identifiable medical condition requiring ongoing treatment.

In support of her assertion that she was being treated by Aranow for morbid obesity, an identifiable medical condition, the plaintiff points to medical records dating from her initial consultation with Aranow during which he diagnosed morbid obesity and discussed with her different options for treating this condition, including

gastric bypass surgery. In support of her contention that the condition of morbid obesity required ongoing treatment, she cites a letter written by Aranow and addressed to Dr. Janice Oliveri, the plaintiff's primary care physician, in which Aranow informed Oliveri that he had diagnosed the plaintiff to be morbidly obese and stated that "[t]he multiple morbidities that this patient suffered can clearly be dramatically improved, if not cured entirely, by the weight loss that follows bariatric surgery."[12] She also points to a series of "postoperative follow-up notes" from eight postoperative visits with Aranow.[13] The bottom portion of each postoperative note indicated that it was "to be completed by M.D." The bottom portions included a section comparing the patient's current weight and preoperative weight, a section detailing tests done during the examination, a section for noting improvements, a planning and recommendation section, and a section indicating when the patient's next visit was scheduled to occur. All of the notes submitted by the plaintiff contained indications of the plaintiff's current and preoperative weight and notations regarding Aranow and the plaintiff's and Aranow's plan for the plaintiff's recovery.

On the basis of the pleadings, affidavits, and record before us, we conclude that the evidence submitted by the plaintiff was sufficient to create a genuine issue of material fact as to whether she had an identifiable medical condition that required ongoing treatment and monitoring. Aranow's letter to Oliveri, together with the sections of the "postoperative follow-up notes" regarding plans and recommendations for the future, provide support for the plaintiff's contention that her condition of morbid obesity required ongoing treatment and monitoring that was not necessarily completed when Aranow finished the gastric bypass surgery.

With regard to the second prong of the *Grey* test, the plaintiff argues that she submitted evidence, in the form of medical records and testimony, sufficient to create a genuine issue of material fact as to whether Aranow provided ongoing treatment or monitoring for her condition of morbid obesity or that the plaintiff reasonably could have anticipated that he would do so.[14] In support of her contention that she reasonably believed that Aranow would provide ongoing treatment or monitoring, the plaintiff submitted her own deposition testimony in which she indicated that she believed that Aranow would provide ongoing treatment and monitoring for her condition of morbid obesity and for issues relating to the gastric bypass surgery. In support of her contention that Aranow did in fact provide ongoing treatment for her condition of morbid obesity, the plaintiff points to the "postoperative follow-up notes," which indicate that the plaintiff had appointments with Aranow at least once per year, and that, at each visit, Aranow made notes about her weight, ordered tests, and conveyed plans and recommendations for the

future relating to the plaintiff's condition of morbid obesity. The defendants, on the other hand, argue that the plaintiff did not receive ongoing treatment for an identifiable medical condition. Supporting this assertion is Aranow's deposition testimony, in which he stated that the plaintiff's postoperative appointments were solely and specifically related only to her gastric bypass operation. On the basis of the pleadings, affidavits, and evidence submitted to the trial court in the record before us, we conclude that there is a genuine issue of material fact as to the second prong of the *Grey* test, that is, whether Aranow provided the plaintiff with ongoing treatment and monitoring for the condition of morbid obesity.

Because we find there are genuine issues of material fact as to the first and second prongs[15] of the *Grey* test, we conclude that the court improperly determined that the plaintiff did not present evidence sufficient to create a genuine issue of material fact as to whether the continuing treatment doctrine applied to toll the statute of repose set forth in § 52-584. Summary judgment, then, was erroneously granted as to Aranow and Shoreline on that claim.

II

The plaintiff next claims that the court erred in declining to recognize a "foreign object" exception to the statute of repose contained in § 52-584.[16] The plaintiff argues that the doctrine of equitable tolling permits the court to carve out such an exception and that more than one-half of the states have adopted a foreign object exception. We disagree.

We ordinarily apply a deferential standard of review to a trial court's equitable determinations: "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Our standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 609, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006).

The plaintiff's argument, however, requires us first to determine whether Connecticut courts have adopted the common-law foreign object exception as it has been applied by the courts of some of our sister states. This determination is a question of law over which our review is plenary. See, e.g., *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 730, 917 A.2d 540 (2007) (whether Connecticut courts have adopted common-law doctrine of equitable recoupment, as applied by federal judiciary to tax appeals, presents question

of law over which review is plenary).

Connecticut courts have not recognized a foreign object exception to § 52-584. The fact that several other states' *legislative* bodies have enacted foreign object exceptions to their respective statutes of limitations for professional negligence claims does not compel our compliance. If our legislature thought it wise to toll the statute of repose for claims involving foreign objects, it is surely capable of doing so. See, e.g., *Ecker* v. *West Hartford*, 205 Conn. 219, 241, 530 A.2d 1056 (1987) ("There is no reason, constitutional or otherwise, which prevents the legislature from establishing a three year time period that runs from the date of the act or omission complained of, as was done here, even though at that date no person had sustained damage and therefore no cause of action had come into existence. . . . It is not the function of the court to alter a legislative policy merely because it produces unfair results. . . . Individual rights and remedies must at times and of necessity give way to the interests and needs of society." [Citations omitted]).

The policy considerations are best left to the legislature. We conclude that the court did not err in declining to create a foreign object exception to the statute of repose provided for in § 52-584.

### III

The plaintiff claims that § 52-584 violates the "open courts" provision of article first, § 10, of the Connecticut Constitution by denying her the ability to bring a claim and thus leaving her without redress for her injuries. The plaintiff argues that should it be determined that the continuing course of conduct and treatment doctrines do not apply to this case,[17] § 52-584 will deprive her of the right to bring a claim of professional negligence without providing a reasonable alternative. The plaintiff argues that while this court has "refused to find the statute unconstitutional in other cases, such as *Golden* [v. *Johnson Memorial Hospital, Inc.*,] supra, 66 Conn. App. 533–42, and *Neuhaus* [v. *DeCholnoky*, 83 Conn. App. 576, 589–95, 850 A.2d 1106 (2004), rev'd in part on other grounds, 280 Conn. 190, 905 A.2d 1135 (2006)] the facts of this case, and of any 'foreign object' case, warrant a reconsideration of these rulings." We disagree.

Certain general principles govern our review of the plaintiff's state constitutional claim. First, "[t]he constitutionality of a statute presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 155, 957 A.2d 407 (2008). Second, it is "well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality

beyond a reasonable doubt." (Internal quotation marks omitted.) Id. Third, "[e]very presumption is to be given in favor of the constitutionality of the statute." (Internal quotation marks omitted.) *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 533. "Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 155.

Article first, § 10, of the constitution of Connecticut, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "Article first, § 10, has been viewed as a limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818, when article first, § 10, was adopted, and which were incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . . Therefore, where a right existed at common law or by statute in 1818 and became incorporated into the Connecticut constitution by the adoption of article first, § 10, the legislature may restrict or abolish such incorporated right only where it provides a reasonable alternative to the enforcement of such right." (Citations omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford*, supra, 205 Conn. 234.

Section 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician, surgeon . . . [or] hospital . . . may be brought more than three years from the date of the act or omission complained of . . . ." "Statutes of repose are constitutional enactments that involve a balancing of the hardship caused by the potential bar of a just claim with the advantage of barring stale claims. . . . When a right exists at common law, a statute of repose functions only as a qualification on the remedy to enforce the preexisting right." (Internal quotation marks omitted.) *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 534–35. "Reasonable conditions on a cause of action do not amount to a violation of the constitution. . . . A strict and inflexible interpretation of article first, § 10, could affect the legislature's ability to pass, enact and repeal laws. Such an encumbrance upon the legislature would freeze common law rights in perpetuity." (Citation omitted; internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 304, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

Our Supreme Court has "specifically determined that a lawsuit commenced more than three years from the

date of the negligent act or omission complained of is barred by the statute of limitations, § 52-584, regardless of whether the plaintiff had not or, in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period. *Stein* v. *Katz*, 213 Conn. 282, 285, 567 A.2d 1183 (1989); *Catz* v. *Rubenstein*, 201 Conn. 39, 49–50, 513 A.2d 98 (1986); *McDonald* v. *Haynes Medical Laboratory, Inc.*, 192 Conn. 327, 334, 471 A.2d 646 (1984)." *Blanchette* v. *Barrett*, supra, 229 Conn. 265.

In *Golden*, nine years after the statute of limitations had expired, the plaintiff brought a professional negligence claim against a pathologist and hospital for alleged negligence in failing to diagnose Hodgkin's disease. *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 521–22. The trial court granted the defendants' motions for summary judgment and the plaintiff appealed. On appeal, the plaintiff argued that § 52-584 deprived him of his right to bring a claim of medical negligence without providing a reasonable alternative. Id., 533. Specifically, he argued that the application of § 52-584 entirely deprived him of his right to redress because it unconstitutionally barred his action before he was able to discover his injury. Id., 537. This court held that the plaintiff had not been deprived entirely of his right to redress. Id. This court explained: "His right to redress is limited to a specified period of time. The common-law right that the plaintiff claims was abridged by the application of § 52-584 is the right to bring an action in tort for medical malpractice against a hospital and a pathologist. Section 52-584 restricts the right to bring an action for medical negligence only to the extent that it restricts the time for bringing the action, which we conclude is reasonable . . . ." Id. This court continued: "In light of our Supreme Court's previous decisions, we cannot agree with the plaintiff's argument. A common-law cause of action may be limited by the statute of limitations, regardless of whether the cause of action was discovered or could have been discovered within the time prescribed." Id., 537–38.

In *Neuhaus* v. *DeCholnoky*, supra, 83 Conn. App. 591, we held that § 52-584 did not violate the open courts provision. This court noted that we had previously held in *Golden* that § 52-584 did not violate the open courts provision, and the facts of *Neuhaus* were reasonably similar to the facts in *Golden*. Id. The plaintiffs in both cases had claimed that they could not have discovered their injuries within the three year statute of repose period and that they were therefore prevented by the imposition of the statutory time limit from exercising a common-law right. This court found no constitutional violation.

Here, the plaintiff argues that her claim is factually distinguishable from *Golden* and *Neuhaus*, such that

reconsideration of our precedent is warranted. We disagree. "A common-law cause of action may be limited by the statute of limitations, regardless of whether the cause of action was discovered or could have been discovered within the time prescribed." *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 537–38. The plaintiff has not indicated, nor can we surmise, how her factual situation is significantly different from those of *Golden* and *Neuhaus*. We are bound, then, by our clearly established precedent.

IV

The plaintiff's final claim is that the court improperly rendered summary judgment in favor of the hospital because it incorrectly determined that no agency relationship existed between Aranow and the hospital. In addition to her claim that there was a genuine issue of material fact as to whether an actual agency relationship existed, the plaintiff asserts that there is a genuine issue of material fact as to whether the hospital may be held liable under the doctrine of apparent agency for medical negligence, if any, committed by Aranow. The hospital argues that even if the statute of repose in § 52-584 does not bar the plaintiff's medical negligence claim against Aranow, the court properly determined that the plaintiff's vicarious liability claim against the hospital must fail because the plaintiff failed to show that Aranow was an agent, actual or apparent, of the hospital.

A

The plaintiff argues that the court incorrectly concluded that no actual agency relationship existed between Aranow and the hospital. The plaintiff argues that "the court disregarded evidence presented by the plaintiff regarding the extent of this relationship and instead considered only two self-serving affidavits offered by the . . . hospital regarding its relationship with [Aranow]." We disagree; the plaintiff did not submit evidence sufficient to create a genuine issue of material fact as to whether an actual agency relationship existed between Aranow and the hospital.

Pursuant to the theory of vicarious liability, a principal can be held liable for the negligent acts of its agent. Before vicarious liability can be imposed, however, there must be sufficient evidence produced to warrant a finding of agency between the parties. If there is a finding that the allegedly negligent actor is not an employee or agent, then the claim of vicarious liability must fail. See generally *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 720–21, 735 A.2d 306 (1999).

"Agency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . ."[18] (Internal quotation marks omitted.) *Beck-*

*enstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 132, 464 A.2d 6 (1983), quoting 1 Restatement (Second), Agency § 1 (1958). In order to establish an agency relationship, a plaintiff must prove: "(1) a manifestation by the principal that the agent will act for him;[19] (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking.[20] [See 1 Restatement (Second), supra, § 1, comment (b)]." (Footnotes added; internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 133. Our Supreme Court has held that "[a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." (Internal quotation marks omitted.) Id.

In the context of a medical malpractice action, our Superior Court has consistently held that the fact that a physician holds staff privileges at a hospital is not itself sufficient to support a finding that an agency relationship was created. See, e.g., *Griffin* v. *St. Vincent's Medical Center*, Superior Court, judicial district of Fairfield, Docket No. CV-06-5005220-S (January 11, 2011); *Spaulding* v. *Rovner*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-04-4001232-S (April 3, 2009) (47 Conn. L. Rptr. 544, 547–49); *Walker* v. *Temple Surgical Center*, Superior Court, judicial district of Waterbury, Docket No. CV-06-5005306-S (November 3, 2008).

In the present case, the plaintiff alleged in her complaint that the "[h]ospital's medical staff, nursing staff, agents, servants and/or employees, including . . . Aranow, were *held out to the general public as agents*, servants and/or employees of the . . . [h]ospital, acting within the scope of their authority and/or with[in] the course of their employment and the . . . [h]ospital is liable for their conduct and their consequences." (Emphasis added.)

The plaintiff also offered evidence, in the form of deposition testimony, affidavits, and printouts from the Middlesex Hospital Center for Weight Loss Surgery website (website), which, she argues, demonstrates that there is a genuine issue of material fact as to whether there was an actual agency relationship between Aranow and the hospital. The evidence offered by the plaintiff included: (1) the website homepage, which featured a photograph of Aranow and listed Aranow as the founder and medical director of the Middlesex Hospital Center for Weight Loss Surgery; (2) the text of the website describing Aranow as part of "our team," which included "experienced and specialized nurses and other caregivers" who will "be on hand to monitor your health and progress" after surgery; (3) the text of the website advertising weight loss information sessions conducted by Aranow, and the plaintiff's deposition testimony, in which she stated that Aranow gave

seminars that every prospective weight loss surgery patient had to attend before making an appointment with Aranow; (4) Aranow's curriculum vitae, which stated that he served as the founder and director of Middlesex Hospital Center for Weight Loss Surgery; (5) the plaintiff's deposition testimony that she always understood Aranow to be employed by the hospital, and her sworn affidavit in which she stated that she relied on the belief that Aranow was employed by the hospital in electing to undergo gastric bypass surgery by Aranow at the hospital; and (6) Aranow's deposition testimony in which he stated that he was the "founding member" of the Middlesex Hospital Center for Weight Loss Surgery, that he and the hospital worked together to establish that center—complete with psychologists, dieticians, nursing staff, and sufficient technology—and that he and the hospital had established the center prior to his performing weight loss procedures at the hospital, and that he and the hospital worked together.

In its brief in support of its motion for summary judgment, the hospital argued that Aranow was "a private attending general surgeon providing care and treatment to patients in his private office in Middletown . . . with medical staff privileges at [the] hospital." In support of its argument, the hospital submitted two affidavits. The first affidavit, signed by the vice president of human resources at the hospital, stated that Aranow was not an agent of the hospital and did not have an employment contract with the hospital. The second affidavit, signed by the hospital's chief financial officer, stated that Aranow did not receive any compensation from the hospital for his services.

The court concluded that: "In this case there is no evidence that the hospital consented to have Dr. Aranow act as its agent or that it exercised any control over the means and methods of his practice of medicine. . . . [T]here is no evidence to establish that the professional services provided by Dr. Aranow to the plaintiff, whether in his private offices at Shoreline or while the plaintiff was at the hospital, were controlled by the hospital or that it controlled the manner in which Dr. Aranow performed surgery.

"The plaintiff argues that the hospital's website touts Dr. Aranow as the 'founder' of the Center for Weight Loss [Surgery] and refers to Dr. Aranow as being part of its staff. She also argues that the hospital vested Dr. Aranow with authority to conduct informational seminars on its premises to educate prospective candidates about bariatric surgery. None of these arguments supports the third element of *Beckenstein*, that is, that the hospital controlled or directed the manner in which Dr. Aranow performed surgery. Therefore, even if the statute of limitations did not bar the plaintiff's suit against Dr. Aranow, the hospital would not be liable for his conduct under an agency theory."

The plaintiff argues on appeal that there is a genuine issue of material fact as to the third element of the *Beckenstein* test, that is, whether the hospital had a right to control Aranow's actions. She argues that because the hospital held out Aranow "to the public as the founder and director of its Center for Weight Loss Surgery," if Aranow "behaved in a manner that the . . . hospital found to be inappropriate or harmful, there can be no doubt that the . . . hospital would take steps to discipline him. By way of example, if [Aranow] was found to be over-prescribing narcotics to patients, or performing risky, experimental surgeries, the . . . hospital would certainly make efforts to stop him. Thus, the plaintiff has created a genuine issue of material fact as to the third element of the *Beckenstein* test . . . ."

We agree with court that the plaintiff has not presented evidence sufficient to create an issue of material fact regarding the third element of *Beckenstein*. Allegations, speculation and conclusory statements of fact are not sufficient to withstand summary judgment. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 97 Conn. App. 540. The plaintiff did not present any evidence indicating that the hospital had the right to control Aranow's conduct. The plaintiff did not present evidence that there was a contract between Aranow and the hospital for the provision of services, nor did the plaintiff present evidence of any sort of understanding between the hospital and Aranow that the hospital had a right to control Aranow's performance of surgery or prescription of medication.

The hospital presented evidence that there was no employment contract between the hospital and Aranow and evidence that the hospital did not provide any compensation to Aranow. The plaintiff did not present any evidence to counter these affidavits sufficient to create a genuine issue of material fact. Therefore, we conclude that the court properly determined, as a matter of law, that there was no actual agency relationship between Aranow and the hospital.

B

The plaintiff's final claim is that the court incorrectly determined that the hospital could not be held liable for Aranow's alleged negligence on an apparent agency theory as a matter of law and, in any event, that there was no apparent agency relationship between the hospital and Aranow. The plaintiff contends that the court improperly relied on *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, 136 Conn. App. 662, 670, 47 A.3d 887 (2012), for the proposition that the doctrine of apparent authority cannot be used to impose tort liability on an alleged principal, and that the court failed to consider our Supreme Court's decision in *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 18 A.2d

347 (1941), which implied the contrary. The plaintiff further contends that she presented evidence, in the form of affidavits and testimony, sufficient to create a genuine issue of material fact as to whether the hospital may be held liable for Aranow's negligence under the doctrine of apparent authority.

The hospital argues that the court properly concluded that the hospital could not be held liable as a matter of law pursuant to the doctrine of apparent authority. The hospital maintains that, in Connecticut, the doctrine of agency by estoppel, or apparent authority, has never been used to attach tort liability. See *Davies* v. *General Tours, Inc.*, supra, 63 Conn. App. 31; *Mullen* v. *Horton*, 46 Conn. App. 759, 772, 700 A.2d 1377 (1997).

In its memorandum of decision, the court concluded that even if the statute of limitations did not bar the plaintiff's claims against Aranow, the hospital could not be held vicariously liable under a theory of apparent authority. In so ruling, the court relied on *L & V Contractors, LLC*. Because we are bound by that precedent, we conclude that the court properly rendered summary judgment in favor of the hospital.

We begin with a review of the legal principles underlying the doctrine of apparent authority, also known as the doctrine of agency by estoppel. "Apparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses.[21] This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question . . . and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent." (Footnote added; internal quotation marks omitted.) *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 496–97.

The law in Connecticut regarding the applicability of the doctrine of apparent authority to actions in tort is not entirely clear. We begin with *Fireman's Fund Indemnity Co.*, in which our Supreme Court first addressed the issue of the applicability of the doctrine of apparent authority to actions brought in tort. In that case, the issue before the court was whether a tortfeasor's employer could properly be held liable for the tortfeasor's negligence pursuant to the doctrine of apparent authority.

The facts of *Fireman's Fund Indemnity Co.* are as follows. The defendant country club, located on an inlet of Long Island Sound, employed young men, who wore green uniforms, to park members' cars upon arrival at the club and to deliver their cars upon leaving the club. Id., 494. Their income was wholly derived from the tips they received. The plaintiff's subrogor, a club member and automobile owner (member)[22] arrived at the club one Sunday afternoon to play golf. Upon his arrival, he surrendered his car to a parking attendant, as was his custom, who parked the car near an inlet of Long Island Sound. After the member finished playing golf, the attendant delivered his car to him. When the member informed the attendant that he was not then leaving, the attendant returned the car to the same place he had originally parked it. Id., 495. The member ate dinner at the club, after which, at approximately 10 p.m., he went out onto the porch of the clubhouse to find a parking attendant and found no parking attendants available. James Plant, a watchman employed by the defendant, who had finished his work and eaten dinner in the clubhouse kitchen, walked past the plaintiff. Plant was wearing a blue uniform. The member asked Plant if he could drive a car, to which Plant replied 'Yes.' The member offered him a fifty cent tip in exchange for Plant's retrieving the member's car and bringing it to him. Plant agreed and departed, but did not return. Id.

After a search, member's car was found submerged in the waters of the inlet. Id. Plant was in the driver's seat, drowned. Evidence submitted at trial indicated that Plant was employed by the defendant as a watchman to patrol the grounds from 9 a.m. to 5 p.m. on certain days, and from 12 p.m. to 10 p.m. on Saturdays and Sundays, after which he ate in the clubhouse kitchen. His duty was to prevent nonmembers from entering the defendant club. In exchange for his work he was paid $60 a month and received certain meals. Evidence submitted at trial indicated that Plant did not have any authority to park cars or to deliver cars for members when the plaintiff engaged him. There was no testimony that Plant had ever parked or delivered a car for a member at any other time, and it was unknown whether Plant was capable of driving and parking cars. Id.

Applying the test for apparent authority to the facts

found, our Supreme Court concluded that Plant did not act within the "apparent or ostensible scope of his authority." Id., 497. The court focused on the defendant's representations in concluding that "the plaintiff failed to establish that the defendants held Plant out to the members as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; or that [the member] acting in good faith had reason to believe and did believe that Plant possessed the necessary authority. The defendants' liability is determined by what authority [the member], exercising reasonable care and prudence, was justified in believing that the defendants had by their acts under the circumstances conferred on Plant." Id., 497–98. Our Supreme Court, therefore, concluded that the facts of the case were not sufficient to establish apparent authority. Id., 498.

*Fireman's Fund Indemnity Co.* held only that the facts of that case were insufficient to create apparent authority. Our Supreme Court did not hold or even mention the possibility that the doctrine of apparent authority applied only to actions in contract and was not available to actions in tort; nor, of course, did it hold to the contrary. The issue of whether vicarious liability could be used to hold a principal liable in tort was simply not an issue in the case.

This court addressed the issue of the applicability of the doctrine of apparent authority to actions in tort on several occasions. In *Mullen* v. *Horton*, supra, 46 Conn. App. 759, this court dealt with the issue of the applicability of the doctrine of apparent authority to actions in tort in the context of sexual abuse. In that case, the defendants were a Roman Catholic priest (priest), who was ordained by and an agent of the Oblate order (Oblate). The priest was also a practicing psychologist who performed weekly priestly duties at St. Matthew's Church in Tolland, where the plaintiff was a parishioner. In August, 1988, the plaintiff sought treatment from the priest for psychological, emotional, and marital problems because of his joint status as a Roman Catholic priest and a psychologist. The plaintiff was treated by the priest at a therapy center where he maintained an office, as well as at a spiritual retreat center in Willimantic. In February, 1989, the priest began a sexual relationship with the plaintiff. Sexual encounters occurred during the counseling sessions until February, 1992. In 1993, the plaintiff filed a seven count complaint against the priest and the Oblate. The Oblate filed a motion for summary judgment, arguing that there was no genuine issue of material fact as to whether it was vicariously liable for the priest's alleged misconduct under either the doctrine of respondeat superior or the doctrine of apparent authority. Id., 760–61. This court held that with the trial court properly found that no genuine issue of material fact existed as to whether the Oblate was vicariously liable for the priest's actions

under the doctrine of apparent authority.[23] This court explained: "In other states, the doctrine of apparent authority has been used to hold a principal, who represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable for harm caused to the third person by the lack of care or skill of his servant or agent. See 1 Restatement (Second), Agency § 267, pp. 578–79 (1958); see also *Mehlman* v. *Powell*, 281 Md. 269, 272–75, 378 A.2d 1121 (1977); *Sanders* v. *Rowan*, 61 Md. App. 40, 50–58, 484 A.2d 1023 (1984); *McClellan* v. *Health Maintenance*, 413 Pa. Super. 128, 135–39, 604 A.2d 1053 (1992). In Connecticut, however, the doctrine of apparent authority has never been used in such a manner. Thus, because we are bound by Connecticut precedent; see *Conway* v. *Wilton*, 238 Conn. 653, 658–59, 680 A.2d 242 (1996); *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 195, 676 A.2d 831 (1996); we conclude that the doctrine of apparent authority is inapplicable to this case." *Mullen* v. *Horton*, supra, 46 Conn. App. 771–72.

In *Davies* v. *General Tours, Inc.*, supra, 63 Conn. App. 34, this court held that the plaintiff, who injured her ankle when she stepped into deep sand while exiting a tour bus parked on the side of a Moroccan highway, had not "set forth facts sufficient to establish an agency relationship between the defendant [domestic tour operator] and Recep [a Morrocan travel agency] that would permit her to hold the defendant liable for the acts or omissions of Recep or its employees." Id., 34. In *Davies*, this court stated: "The plaintiff cites two Superior Court decisions in support of her proposition that her cause of action against the defendant, under a theory of apparent agency, should proceed to trial. We are not persuaded. Those cases, *at most*, permitted causes of action against hospitals for the acts or omissions of independent contractors who were held out by the hospitals to be employees, not partners.[24] We have found no Connecticut authority favoring the plaintiff's proposition that this same reasoning should apply to the tenuous relationship between a tour operator and an independent contractor that it contracted with to provide services to tourists around the world." (Emphasis in original; footnote omitted.) Id., 32–33.

This court's decisions in *Mullen* and *Davies*, when read in conjunction with our Supreme Court's decision in *Fireman's Fund Indemnity Co.*, held that the facts of those cases did not justify the imposition of vicarious liability and stated that the doctrine of apparent authority had not yet been affirmatively recognized by our appellate courts to be applicable to tort cases. Although *Mullen* may have implied that the doctrine is simply not available to create liability in tort, *Davies* appears to leave the door open.[25]

More recently, however, this court discussed whether

apparent authority applies to tort liability in *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 662. In *L & V Contractors, LLC*, the plaintiff sought to hold the defendant AAMCO Transmissions, Inc. (AAMCO), an alleged principal, liable for the actions of its alleged agent, a repair shop, under various theories of tort liability including conversion, statutory theft, and fraudulent and negligent misrepresentation. Id., 665. The plaintiff's insurer brought the plaintiff's vehicle, which needed various repairs, to a repair shop that utilized the AAMCO name. Id., 665–66. After the plaintiff's insurer failed to pay for the repairs, the repair shop obtained a mechanic's lien against the vehicle. Id., 664. When the plaintiff attempted to pay for the repairs itself, the repair shop represented to the plaintiff that the vehicle had been sold to cover the cost of the repairs despite the fact that it actually had not been sold. Id. The trial court concluded that AAMCO was liable for the actions of the repair shop under the doctrine of apparent authority. Id., 666. This court reversed, holding that apparent authority did not apply in the context of tort liability or in the absence of a pre-existing relationship. Id., 669–70.

In *L & V Contractors, LLC*, we explained: "Connecticut . . . has yet to apply the doctrine of apparent authority to allow for a principal to be held liable to a third person who was harmed by the tortious conduct of a person held out as the principal's agent. In *Mullen* v. *Horton*, [supra, 46 Conn. App. 771] . . . this court observed that other states have used the doctrine of apparent authority to hold a principal, who represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable for harm caused to the third person by the lack of care or skill of his servant or agent. The court, however, noted that the doctrine had never been used in such a manner in Connecticut and, therefore, concluded that the doctrine of apparent authority was inapplicable to the case before it. . . .

"In *Davies* v. *General Tours, Inc.*, [supra, 63 Conn. App. 31] . . . this court again determined that the doctrine of apparent authority should not be used to hold a principal liable for the tortious conduct of a person held out as its agent. Citing *Mullen*, we determined that apparent authority is not a viable ground on which to premise liability against a [principal] sued for the torts of an alleged agent. . . .

"In the present case, the claims against AAMCO sound in tort and are based on the tortious conduct of [the repair shop], which the plaintiff alleges AAMCO held out as its agent. Because this court has held that the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent, we conclude that the trial court erred in determining that [the repair shop] had apparent author-

ity to bind AAMCO." (Citations omitted; internal quotation marks omitted.) *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 669–70.

The hospital contends that *L & V Contractors, LLC*, controls and holds that apparent authority can never be used to establish vicarious liability for actions in tort brought in Connecticut. The plaintiff contends that *Fireman's Fund Indemnity Co.*, and this court's decisions in *Davies* and *Mullen*, along with numerous Superior Court cases, suggest that Connecticut courts have not directly barred the application of the doctrine of apparent agency to actions in tort. The plaintiff also contends that *Fireman's Fund Indemnity Co.* controls, because this court's arguably contrary decision in *L & V Contractors, LLC*, does not mention our Supreme Court's decision in *Fireman's Fund Indemnity Co.* The plaintiff argues that to that effect she has submitted evidence sufficient to create a genuine issue of material fact as to whether the hospital held out Aranow as its apparent agent and whether the plaintiff relied on this representation.[26]

We cannot overlook the clear language in our decision in *L & V Contractors, LLC*, which states: "the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent . . . ." *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 670. "It is settled policy . . . that one panel of this court, on its own, cannot overrule the precedent established by a previous panel's holding." *State* v. *Eleck*, 130 Conn. App. 632, 645, 23 A.3d 818 (2011), aff'd, 314 Conn. 123, A.3d (2014). Because we are bound by our decision in *L & V Contractors, LLC*, we conclude that the trial court correctly determined that the hospital could not be held vicariously liable for Aranow's alleged negligence based on a theory of apparent agency and conclude that, therefore, the court's rendering of summary judgment as to the hospital was proper.

The judgment is reversed in part with respect to Aranow and Shoreline only as to the plaintiff's claim that the continuing course of treatment doctrine applied to toll the statute of repose in § 52-584, and the case is remanded with direction to deny the motion for summary judgment as to that claim and for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The pleadings establish that Aranow practiced medicine at and was an employee or agent of Shoreline, and was a member of the medical staff at the hospital.

[2] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discov-

ered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

"The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose." *Rosato* v. *Mascardo*, 82 Conn. App. 396, 402, 844 A.2d 893 (2004); see also *Barrett* v. *Montesano*, 269 Conn. 787, 794, 849 A.2d 839 (2004) ("the three year provision in § 52-584 is the repose section of the statute of limitations" [emphasis omitted; internal quotation marks omitted]).

[3] Count two of the complaint is not at issue in this appeal. Count two asserted a direct claim of medical negligence against the hospital, alleging that the operating room nursing staff was negligent on December 8, 2003, because they failed to properly conduct the sponge count and allowed a surgical sponge to be left in the plaintiff's abdomen. Any possible negligence on the part of the hospital directly is not at issue on appeal.

[4] On appeal, the plaintiff concedes that the statute of repose in § 52-584 has run with respect to her claims against the defendants. She argues, however, that there are genuine issues of material fact as to whether the statute of repose in § 52-584 was tolled by the continuing course of conduct doctrine and the continuing treatment doctrine.

[5] "These doctrines share similar supporting rationales. The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. Similarly, [t]he policy underlying the continu[ing] treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure. . . .

"Specifically, the primary difference between the doctrines is that the [continuing treatment doctrine] focuses on the *plaintiff's* reasonable expectation that the treatment for an existing condition will be ongoing, while the [continuing course of conduct doctrine] focuses on the *defendant's* duty to the plaintiff arising from his knowledge of the plaintiff's condition. . . . Accordingly, when the plaintiff had no knowledge of a medical condition and, therefore, had no reason to expect ongoing treatment for it from the defendant, there is no reason to apply the [continuing treatment] doctrine. . . . In contrast, under the continuing course of conduct doctrine, if the defendant had reason to know that the plaintiff required ongoing treatment or monitoring for a particular condition, then the defendant may have had a continuing duty to warn the plaintiff or to monitor the condition and the continuing breach of that duty tolls the statute of limitations, regardless of whether the plaintiff had knowledge of any reason to seek further treatment." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Martinelli* v. *Fusi*, supra, 290 Conn. 356–57.

[6] The plaintiff submits that Aranow owed her a continuing duty to discover and remedy the initial wrong. She claims that the court erred in concluding that Aranow did not owe her a continuing duty. In support of her claim the plaintiff makes two arguments. First, the plaintiff argues that the court erred because it considered only one way in which a continuing duty may arise, that is, later wrongful conduct, and the court should have considered "the ongoing special relationship between the [plaintiff and Aranow], as patient and physician, which our courts have held can create a duty sufficient to satisfy the second prong of the *Witt* test regardless of whether [Aranow] had 'actual knowledge' of the original wrong. The plaintiff claims that the court "incorrectly held that, under the continuing course of conduct doctrine, the statute of limitations would not be tolled unless the [Aranow] had 'actual knowledge' that a surgical sponge was left in the plaintiff's abdominal cavity during the gastric bypass surgery in December of 2003."

In granting summary judgment in favor of the defendants, the court concluded that the plaintiff did not present evidence sufficient to create a genuine issue of material fact as to the second prong of the *Witt* test, that is, whether Aranow owed her a continuing duty related to the alleged original wrong of leaving a surgical sponge inside the plaintiff's abdomen during the performance of gastric bypass surgery. In its memorandum of decision, the court reasoned that Aranow did not have a continuing duty to the plaintiff because the plaintiff did not present any evidence creating a genuine issue of material fact as to whether Aranow had actual knowledge of, or reason to suspect, the alleged initial wrong—that is, the retained sponge in the plaintiff's abdomen—or engaged in some later wrongful conduct.

The court reasoned: "The defendants have submitted evidence that at the time of the surgical procedure, Dr. Aranow was informed by the hospital

staff, who were responsible for the surgical sponge count, that the sponge count was correct. There is no evidence that any defendant had reasons to suspect that the sponge count was incorrect or that their care of the plaintiff was in any way negligent. Without such evidence there is no factual basis on which to allege that any defendant had actual knowledge of a suspected retained sponge in the plaintiff's abdomen which they failed to make known to the plaintiff and, therefore, no basis to toll the statute of limitations under . . . the continuing course of . . . conduct doctrine. . . .

"Unlike *Witt*, this is not a case where the defendants suspected that the plaintiff had any type of a concerning condition about which they failed to advise the plaintiff. The defendants, therefore, did not commit 'some later wrongful conduct' related to their prior acts which might implicate the *Witt* exception, triggering the continuing duty to warn."

The plaintiff argues that the court misinterpreted our case law to include a requirement that a defendant doctor possess actual knowledge as a prerequisite for finding that the defendant doctor owed a continuing duty to the plaintiff. The plaintiff argues that Connecticut courts have imposed only an "actual knowledge" requirement in cases where there is no ongoing physician-patient relationship. See, e.g., *Martinelli* v. *Fusi*, supra, 290 Conn. 363. According to the plaintiff, it follows that in cases where an ongoing physician-patient relationship exists, that relationship alone is sufficient to find a continuing duty and there is no requirement that the physician have "actual knowledge" that he committed a prior wrong.

Second, the plaintiff argues that she presented evidence such that there is a genuine issue of material fact as to whether Aranow had an ongoing duty to the plaintiff by virtue of an ongoing special relationship as physician and patient. The plaintiff points to her medical records, which indicate that she was being treated for morbid obesity, and that, following the gastric bypass surgery, she continued to attend appointments with Aranow at least once a year and on at least eight separate occasions.

In response, Aranow contends that the court properly determined that the statute of repose in § 52-584 is not tolled by the continuing course of conduct doctrine unless there is evidence that the physician had actual knowledge of the initial wrong. Accordingly, he argues that here, because there was uncontested evidence demonstrating that he did not have actual knowledge of the initial wrong, the statute of repose cannot be tolled. Aranow points to his own deposition testimony and that of hospital staff, which demonstrate that he was informed by the hospital staff, who were responsible for the sponge count, that the sponge count was correct. Aranow argues that summary judgment was appropriate because the plaintiff failed to submit any evidence in rebuttal which could create a genuine issue of material fact as to whether he had actual knowledge of the retained sponge in the plaintiff's abdominal cavity.

[7] In her amended complaint, the plaintiff did not allege that Aranow breached a continuing duty owed to her. She alleged that Aranow was negligent, and breached the duty of care owed to the plaintiff, in failing to locate and remove all instruments and/or surgical sponges from her abdominal cavity, in failing to ensure that the sponge count was accurate, and in failing to perform the gastric bypass surgery in such a manner as to ensure the health and well-being of the plaintiff. Nowhere in her amended complaint does the plaintiff allege that Aranow breached a continuing duty owed to the plaintiff after the initial alleged wrong.

[8] The plaintiff submitted Aranow's deposition testimony in which he states that he treated another patient who had a retained surgical instrument in their abdomen following a gastric bypass procedure and that, in that case, he ordered a CT scan that ultimately revealed the presence of the instrument, which was subsequently removed. This evidence, however, is irrelevant to the issue of whether Aranow breached a continuing duty owed to the plaintiff in this case. The plaintiff does not allege that the facts of her case mirror the facts of the other patient's case. In fact, the plaintiff has provided no evidence about the facts and circumstances giving rise to Aranow's discovery of the instrument in his other patient. Therefore we have no basis on which to compare Aranow's failure to order exploratory tests in this case with his choice to order exploratory tests in other cases.

[9] It is useful to contrast the factual situation in *Witt* v. *St. Vincent's Medical Center*, supra, 252 Conn. 363. In *Witt*, the defendant pathologist examined tissue from a biopsy performed on the plaintiff in 1983, and he reported apparently benign lymphoid hyperplasia. Id., 365. The plaintiff was diagnosed with lymphatic cancer eleven years later. In an addendum to the later report, the defendant wrote that he had been concerned at the time (of the initial reading) that the plaintiff "might be evolving a small lymphocytic lymphoma/CCL." Id. Our Supreme Court held that there was a genuine issue as to the continuing breach of duty because the initial knowledge of a potential

problem could be found to have triggered a duty to warn and to report the initial concerns. A jury could find that the duty was continually breached. Id., 376. The court held that the situation was analogous to that of a physician who, after an initial diagnosis, learns that the first diagnosis was incorrect. Id.

In the present case, there is no evidence of such continuing breach. There is no genuine issue as to Aranow's lack of knowledge of the presence of the sponge, and there is no evidence that his failure to diagnose the presence of the sponge fell below the applicable standard of care.

[10] The plaintiff claims that the court incorrectly determined that that the continuing treatment doctrine did not apply because: (1) the court incorrectly concluded that the "identifiable medical condition" required to satisfy the first prong of *Grey* v. *Stamford Health System, Inc.*, 282 Conn. 745, 924 A.2d 831 (2007), was limited to the surgical sponge itself, rather than the plaintiff's overarching condition of morbid obesity; (2) the court made an improper factual determination that the plaintiff's testimony that she complained to Aranow about postoperative stomach pain was not credible, and from this concluded that the plaintiff did not present any evidence that she was being treated for an identifiable medical condition; and (3) the court, in analyzing the second prong of *Grey*, improperly focused on Aranow's beliefs about whether he provided continued treatment, although our law requires the court to focus on the plaintiff's reasonable beliefs and expectations about whether she was receiving continuing treatment and monitoring.

[11] In her memorandum of law opposing Aranow and Shoreline's motion for summary judgment, the plaintiff argued that she satisfied all three prongs of the *Grey* test because: (1) she submitted medical records, letters, testimony, and other evidence tending to show that her gastric bypass surgery was only one part of her treatment for her condition of morbid obesity, an identifiable medical condition, that required ongoing postsurgical treatment and monitoring; (2) she submitted evidence in the form of deposition testimony, pamphlets, and medical records, tending to show that she reasonably could have anticipated that Aranow, the physician who diagnosed her condition of morbid obesity, advised her about and performed the surgery, and worked with her to develop a comprehensive plan for overcoming her morbid obesity, would continue to provide care and monitoring regarding her condition of morbid obesity post-surgery; and (3) she brought the action on August 5, 2010, less than three years after Aranow's ongoing treatment ended by the discovery of the foreign material on August 6, 2009, and subsequent treatment to remove it.

[12] At the time of Aranow's diagnosis of the plaintiff, he indicated that the plaintiff also suffered from diabetes, hypertension, arthritis, urinary incontinence, depression, and hyperlipidemia.

[13] The top portion of the postoperative note, which appears to be filled out by the patient, includes several categories such as a section asking the patient to describe the visit as "routine" or "other." The plaintiff indicated on each note that the purpose of her visit was "routine."

[14] Aranow argues that the plaintiff did not submit any evidence that Aranow provided continuing treatment other than treatment for the plaintiff's condition of a "retained surgical sponge." The failure, however, of a physician to make the correct diagnosis as to the underlying condition, while continuing to treat or to monitor the symptoms, such as abdominal pain, does not mean, for purposes of continuity, that there has not been treatment or monitoring. *Miccio* v. *Gerdis*, 120 App. Div. 3d 639, 640, 990 N.Y.S.2d 863 (2014). Thus, a physician cannot defeat the application of the continuous treatment doctrine merely because of his failure to make a correct diagnosis as to the underlying condition, where he treated or monitored the patient continuously over the relevant time period for symptoms that are ultimately traced to that condition. Id.

[15] The third prong of the *Grey* test is not at issue in this appeal.

[16] In states that have adopted a foreign object exception, that exception generally provides that when a foreign object is unintentionally left in a plaintiff's body during a medical procedure, the statute of limitations is tolled until such time as the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the presence of the foreign object. See, e.g., Massachusetts General Laws, ch. 260, § 4, and New York Civil Practice Law and Rules § 214-a.

[17] We note that although in further proceedings it may be found that the continuing treatment doctrine tolls the statute of repose, it also may turn out that the doctrine is unavailing. We therefore reach the constitutional issue.

[18] The determination of whether one is an employee or an independent contractor "depends upon the existence or nonexistence of the right to control the means and method of work." *Beaverdale Memorial Park, Inc.*

v. *Danaher*, 127 Conn. 175, 179, 15 A.2d 17 (1940). Liability will generally not be imposed on the employer for the negligence of an independent contractor because of the absence of the right to control. See *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 528, 825 A.2d 72 (2003) ("[o]rdinarily, an employer of an independent contractor, absent an act of negligence on his own part, is not liable for the negligent acts of the contractor" [internal quotation marks omitted]); see also D. Wright & J. FitzGerald, Connecticut Law of Torts (2d Ed. 1968) § 67.

[19] In determining whether the parties *intended to form an agency relationship*, the "operative terms" of any agreement between the parties should be examined. *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 133–34; see also *Darling* v. *Burrone Bros. Inc.*, 162 Conn. 187, 195, 292 A.2d 912 (1972).

[20] With respect to the issue of control, our Supreme Court has held that "independent ownership of a substantial enterprise" is an important factor to consider because "an independent owner is less likely to submit to the control of others in the operation of its business than a non-owner." (Internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 137. An employer may exercise control over the general results and also the immediate results from time to time, without creating an agency relationship. *Darling* v. *Burrone Bros. Inc.*, 162 Conn. 187, 193, 292 A.2d 912 (1972).

Other factors our courts have considered when analyzing the issue of control include: (1) whether the alleged agent is engaged in a distinct occupation or business; see, e.g., *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 137; (2) the kind of occupation, with respect to whether the work is typically done under the direction of the employer or without supervision; see, e.g., *Northwestern Mutual Life Ins. Co.* v. *Tone*, 125 Conn. 183, 192, 4 A.2d 640 (1939); (3) the skill required to perform the work; see, e.g., *Darling* v. *Burrone Bros. Inc.*, supra, 162 Conn. 193–97; and (4) the method of payment, whether by the time or by the job; see, e.g., *Bourgeois* v. *Cacciapuoti*, 138 Conn. 317, 319–21, 84 A.2d 122 (1951).

[21] 1 Restatement (Second), Agency § 267, pp. 578–79 (1958) provides: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

[22] The plaintiff insurer apparently paid for the loss of the member's car and was subrogated to the member's right to bring an action against the defendant club, which allegedly was vicariously liable for the tort of the club's employee. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 493–94.

[23] The court found that there was a genuine issue as to liability under the doctrine of respondeat superior. *Mullen* v. *Horton*, supra, 46 Conn. App. 762–71.

[24] The plaintiff in *Davies* alleged that the defendant had held out Recep to be its partner. *Davies* v. *General Tours, Inc.*, supra, 63 Conn. App. 27.

[25] The proposition that apparent agency may be used to hold a principal liable to a third person who was harmed by the tortious conduct of a person held out as the principal's agent is well established in New York. See, e.g., *Hannon* v. *Seigel-Cooper Co.*, 167 N.Y. 244, 60 N.E. 597 (1901) (defendant department store represented and advertised itself as carrying on practice of dentistry in one of its departments, when department was actually leased by Hayes who employed Dr. Cooney to render professional dental services, defendant was held vicariously liable for plaintiff's alleged injuries from Dr. Cooney via doctrine of apparent agency; "here the plaintiff had a right to rely not only on the presumption that the defendant would employ a skillful dentist as its servant, but also on the fact that if that servant, whether skillful or not, was guilty of any malpractice, she had a responsible party to answer therefor in damages"). Similarly, as noted in *Mullen*, several other states accept apparent agency as a means of imposing vicarious liability in tort actions. *Mullen* v. *Horton*, supra, 46 Conn. App. 771–72.

Several other states also recognize that apparent agency is a valid means of establishing liability in medical malpractice. See, e.g., *Seneris* v. *Haas*, 45 Cal. 2d 811, 831–32, 291 P.2d 915 (1955); *Mehlman* v. *Powell*, 281 Md. 269, 272–75, 378 A.2d 1121 (1977); *Howard* v. *Park*, 37 Mich. App. 496, 499–502, 195 N.W.2d 39, leave to appeal denied, 387 Mich. 782 (1972); *Stratso* v. *Song*, 17 Ohio App. 3d 39, 46–48, 477 N.E.2d 1176 (1984); *McClellan* v. *Health Maintenance Organization*, 413 Pa. Super. 128, 135–39, 604 A.2d

1053, leave to appeal denied, 532 Pa. 664, 616 A.2d 985 (1992); *Adamski* v. *Tacoma General Hospital*, 20 Wn. App. 98, 112–16, 579 P.2d 970 (1978).

In the medical malpractice field, the proposition that the doctrine of apparent agency is available for actions in tort finds support in 40A Am. Jur. 2d. 496 Hospitals and Asylums § 40 (2008), which provides: "[U]nder certain circumstances, a hospital may be held vicariously liable for the acts of physicians, even if they are independent contractors, if these physicians act with the apparent authority of the hospital." This proposition also finds support in numerous Connecticut Superior Court decisons.

Since this court's opinion in *L & V Contractors, LLC*, in July, 2012, our Superior Court has issued numerous decisions expressly or impliedly holding that *L & V Contractors, LLC*, is inapplicable in the medical malpractice context, thus allowing plaintiffs to bring claims of vicarious liability based on the doctrine of apparent agency. See, e.g., *Bordonaro* v. *Anesthesia Associates of Torrington*, Superior Court, judicial district of Litchfield, Docket No. CV-10-6002739-S (October 23, 2012) (55 Conn. L. Rptr. 2, 5–6) (denying motion for summary judgment based upon challenge to apparent agency theory); *Cadavid* v. *Ranginwala*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-12-6014019-S (June 24, 2013) (56 Conn. L. Rptr. 318, 319–20) (denying motion to strike similar claim); *Sheehy* v. *Griffin Hospital*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-12-6011638-S (September 30, 2013) (56 Conn. L. Rptr. 697, 699–700) (same); *Lohnes* v. *Hospital of St. Raphael*, Superior Court, judicial district of New Haven, Docket No. CV-12-6034275-S (November 20, 2013) (57 Conn. L. Rptr. 177, 180–81) (denying hospital's motion to strike); *Heath* v. *Day Kimball Hospital*, Superior Court, judicial district of Hartford, Docket No. X04-CV-11-6026678-S (December 16, 2013) (57 Conn. L. Rptr. 381, 381–86) (denying hospital's motion for summary judgment; "Connecticut law recognizes a claim against a hospital for medical negligence of non-employee physicians based upon a theory of apparent agency"); *Ntumbanzondo* v. *Chau*, Superior Court, judicial district of New Haven, Docket No. CV-11-6017893-S (January 7, 2014) (57 Conn. L. Rptr. 415, 418–20) (denying hospital's motion for summary judgment claiming absence of cause of action for apparent agency); *Passmore* v. *Day Kimball Hospital*, Superior Court, judicial district of Windham, Docket No. CV-11-6004320-S (May 29, 2014) (denying hospital's motion to dismiss and holding that language in *L & V Contractors, LLC*, upon which hospital relied did not control case because it was legally and factually distinguishable).

[26] With respect to her assertion that the hospital held out Aranow as an apparent agent to the public, the plaintiff points to information on the hospital's website, testimony, and affidavits.

The plaintiff points to information set forth on the hospital's website, under the heading Middlesex Hospital Center for Weight Loss Surgery, including: (1) the homepage, which features a photograph of Aranow and lists Aranow as the center's founder and medical director; (2) the description of Aranow as part of "our team" that includes "experienced and specialized nurses and other caregivers" who will "be on hand to monitor your health and progress" after surgery; and (3) the advertisement of weight loss information sessions conducted by Aranow, which, as the plaintiff testified in her deposition, every prospective weight loss surgery patient had to attend before making an appointment with Aranow.

She also points to testimony and affidavits, including her own testimony that stated that she always understood Aranow to be employed by the hospital.

With respect to her assertion that she relied on the hospital's representations in choosing to undergo gastric bypass surgery with Aranow at the hospital, the plaintiff relies on her sworn affidavit in which she stated that she relied on the belief that Aranow was employed by the hospital in electing to undergo gastric bypass surgery with Aranow at the hospital.